OPINION
{¶ 1} Plaintiff-appellant, David R. Kinworthy (hereinafter "David") appeals the judgment of the Allen County Court of Common Pleas denying his motion to terminate/reduce his spousal support obligation to defendant-appellee, Ruth L. Kinworthy, n.k.a. Ruth L. Laman (hereinafter "Ruth"). For reasons that follow, we reverse.
 {¶ 2} On April 29, 1958, David and Ruth were married in Lima, Ohio. On July 13, 1988, the parties were divorced by a final judgment and divorce decree. The divorce decree provided, in pertinent part, that David maintain Ruth as an irrevocable beneficiary of his life insurance policies to the extent of $100,000 as long as he remained a common pleas judge and an alimony award existed. Should David retire, be defeated in an election, or re-enter private practice, then he was ordered to maintain Ruth as an irrevocable beneficiary of his life insurance policies to the extent of $45,000.
 {¶ 3} The court further ordered that David pay Ruth $22,000 per year ($1,833/month) in alimony, subject to the continuing jurisdiction of the court. In reaching this amount, the court noted that David was then earning an annual salary of $73,750, plus $2,200 per year for some part-time employment. The court reserved continuing jurisdiction to modify spousal support "as to a change in circumstances, including but not limited to [David's] retirement." (July 13, 1988 Divorce Decree). *Page 3 
 {¶ 4} On April 8, 1992, Ruth filed a motion for modification of spousal support seeking a $500/month increase because her living expenses increased and David's annual salary increased. On April 30, 1992, David filed an answer and counter-motion seeking an order that spousal support be modified to a fixed number of years. On September 18, 1992, the trial court denied both Ruth and David's motions. Spousal support continued in the previous amount of $22,000 per year ($1,833/month).
 {¶ 5} On November 5, 1997, David filed a second motion seeking a termination of support because Ruth had received a $134,000 inheritance. David asked the court to terminate his life insurance obligation if it terminated his support obligation. On January 12, 1998, Ruth filed a motion seeking an increase in spousal support. On June 23, 1998, the trial court denied Ruth's motion but granted David's motion, in part, reducing his spousal support obligation $800/ month for a total obligation of $1,033/month ($12,396/year).
 {¶ 6} On May 17, 2007, David filed a motion to terminate spousal support and terminate his life insurance obligation, which motion is the subject of this appeal. Prior to the hearing, some discovery disputes arose, which resulted in Ruth filing a motion to compel and request for attorney's fees. On December 17, 2007, the matter proceeded to hearing. On April 8, 2008, the trial court issued its decision denying David's motion to terminate spousal support and awarding Ruth attorney's fees for the discovery violations. The trial court, however, did not *Page 4 
determine the amount of attorney's fees owed by David, but rather, set the matter for a further hearing.
 {¶ 7} On May 5, 2008, David filed an appeal to this Court, which was assigned appellate case no. 1-08-26. However, on May 21, 2008, this Court dismissed the appeal sua sponte for lack of final appealable order, because the trial court did not resolve the amount of attorney's fees owed by David.
 {¶ 8} On June 5, 2008, David filed a Civ. R. 54(B) motion to certify the April 8, 2008 judgment as a final order for purposes of appeal. On June 25, 2008, the trial court granted the motion and "* * * assign[ed] th[e] matter for further hearing as soon as practicable given the varying schedules of the Court and Counsel."
 {¶ 9} On July 23, 2008, David filed a subsequent appeal to this Court, which was assigned appellate case no. 1-08-43 and is the present appeal. David asserts two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The Trial Court committed an error prejudicial to the Plaintiff by finding that the Plaintiff had committed a discovery violation and in finding that a sanction of attorney fees was an appropriate remedy.
 {¶ 10} In his first assignment of error, David argues that the trial court erred in determining that he violated the rules of discovery and in awarding attorney fees to Ruth. Specifically, David argues that the trial court inappropriately found *Page 5 
local rule 20.09 applicable even though it does not apply to spousal support modifications. David further argues that Ruth did not comply with Civ. R. 37(E) by failing to make efforts to resolve the discovery dispute prior to filing the motion to compel. Finally, David argues that the award of attorney fees was inappropriate because the trial court had no evidence of: (1) a fee agreement between Ruth and her attorney; and (2) the fee generated by the discovery dispute. We find that this issue is not properly before the Court; and therefore, overrule the assignment of error.
 {¶ 11} When this Court dismissed David's first appeal, we noted that the April 8, 2008 judgment entry was not a final order under R.C. 2505.02, because "the issue of the amount of attorney fees to be paid by the Plaintiff to the Defendant [was] continued for further hearing." (May 21, 2008 JE, citing trial court's Apr. 8, 2008 JE). This Court further stated: "[t]here is clearly a claim for attorney fees made in conjunction with the post-divorce motion that has not been resolved, as final judgment on the amount of fees awarded will not be issued until further hearing is conducted by the trial court." (May 21, 2008 JE).
 {¶ 12} After our first dismissal, David filed a Civ. R. 54(B) motion with the trial court. The trial court granted the motion and ordered as follows:
 1. That the assignment commissioner of this Court coordinate with the visiting judge and counsel and assign this matter for further hearing as soon as practicable given the varying schedules of the Court and Counsel.
 2. That it is hereby specifically determined that the Decision and Journal Entry of the Court dated April 8, 2008 be, and is *Page 6 hereby amended to indicate that as to the claims of the parties determined therein, there is no just reason or cause for delay effective from the date of this entry. The Court further orders and finds that the issues determined in the April 8, 2008 Decision and Journal Entry be, and are hereby final and appealable pursuant to Civ. R. 54(B) and App. R. 4 from the date that this entry is placed upon the Journal of this Court.
(June 25, 2008 JE) (Emphasis in original). Although the trial court certified that all issues determined in the April 8, 2008 decision were final and appealable orders, it still left undetermined the amount of attorney fees owed by David.
 {¶ 13} An order that grants a party attorney fees but fails to specify the amount is not a final appealable order under R.C. 2505.02. Ft. FryeTeachers Assn. v. Ft. Frye Local School Dist. Bd. of Edn. (1993),87 Ohio App.3d 840, 843, 623 N.E.2d 232; Dayton Women's Health Ctr., Inc.v. Enix (1993), 86 Ohio App.3d 777, 780, 621 N.E.2d 1262. An appellate court's jurisdiction is limited to final orders. Section 3(B)(2), Article IV, Ohio Constitution; R.C. 2505.01. Therefore, we lack jurisdiction over David's first assignment of error. Furthermore, "the mere incantation of the required language does not turn an otherwise non-final order into a final appealable order." Noble v. Colwell (1989),44 Ohio St.3d 92, 96, 540 N.E.2d 1381, citing Cooper v. Cooper (1984),14 Ohio App.3d 327, 471 N.E.2d 525; Douthitt v. Garrison (1981),3 Ohio App.3d 254, 444 N.E.2d 1068; R H Trucking, Inc. v. Occidental Fire Cas. Co. (1981), 2 Ohio App.3d 269, 441 N.E.2d 816. *Page 7 
 {¶ 14} For this reason, we find that David's first assignment of error is not properly before this Court and overrule it.
 ASSIGNMENT OF ERROR NO. II The Trial Court committed an error prejudicial to the Plaintiff by not terminating the Plaintiff's spousal support obligation.
 {¶ 15} In his second assignment of error, David argues that the trial court erred in denying his motion to terminate spousal support. Specifically, he argues that the trial court erred by failing to impute any income to Ruth for the years that she received spousal support but failed to be employed. David also argues that the trial court erred by failing to modify the life insurance requirement because maintaining the policy is extremely expensive due to his age and health. David further argues that the trial court erred in computing his income for purposes of modification to include the amount of money he receives from additional service credit he purchased toward his retirement. Finally, David argues that the trial court erred by imputing income to him without hearing any evidence on how much he could earn in private practice or testimony concerning the average salary of a Lima solo attorney.
 {¶ 16} A trial court has broad discretion in determining whether or not to modify an existing spousal support award. Mottice v. Mottice
(1997), 118 Ohio App.3d 731, 735, 693 N.E.2d 1179; Schultz v.Schultz (1996), 110 Ohio App.3d 715, 724, 675 N.E.2d 55. Absent an abuse of discretion, a trial court's decision to modify or not modify a spousal support award will not be disturbed on appeal. *Page 8 Bostick v. Bostick, 3rd Dist. No. 1-02-83, 2003-Ohio-5121, ¶ 8, citingBooth v. Booth (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion is more than an error in judgment; it signifies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v.Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 17} David argues that the trial court erred by failing to impute income for Ruth in determining whether the spousal support award should be modified. This argument lacks merit. "[A] trial court may, in its discretion, impute income to parties for purposes of spousal support `based on the party's earning ability even if it is determined that a party has no income."' Weller v. Weller, 11th Dist. No. 2001-G-2370, 2002-Ohio-7125, ¶ 47, quoting Motycka v. Motycka (June 19, 2001), 3d Dist. No. 15-01-02, at *5. The imposition and amount of imputed income are determined by the trial court based upon the facts and circumstances of each case. Id., citing Collette v. Collette (Jan. 24, 2001), 9th Dist. No. 20119, at *4. In this case, the trial court noted the following in its judgment entry:
 The Defendant is 70 years of age and suffers from a bad back and tremors. She has had one back surgery. She is unemployable. While it is true that she chose not to be employed for long periods of time after the divorce that was taken into consideration when the court made its last order. At the time of the last order her income was determined to be $4.200.00 per year plus $800.00 a month form [sic] wages. Her spousal support was decreased to $1,033.00 per month. Since the last *Page 9 hearing the Defendant has sold her home moved into a duplex and substantially reduced her expenses and life style. She currently receives her spousal support and social security of $4,146.00 per year. Her expenses of $1,335.51 per month are reasonable. Her mental and psychological health is normal.
(Apr. 8, 2008 JE).
 {¶ 18} The testimony presented supports the trial court's conclusions. Ruth testified that she was sixty-nine years old at the time of the hearing and that her sole sources of income were spousal support and social security. (Dec. 17, 2007 Tr. at 108). Ruth testified that she had back surgery and was occasionally experiencing numbness. (Id. at 109). She also testified that since 1999 she has had tremors in her right hand, so she has difficulty writing, watering the plants, and carrying things. (Id. at 110, 118). Ruth further testified that she sold her home because of the maintenance and moved into a duplex. (Id. at 56, 112). The 1998 judgment entry also indicates that the trial court imputed $800.00 per month to Ruth when it reduced Ruth's spousal support to $1,033.00 per month in its prior order, as found by the trial court. (June 5, 1998 JE at 5-6).
 {¶ 19} Under these circumstances, we cannot conclude that the trial court abused its discretion by failing to impute income to Ruth. Furthermore, it was not unreasonable for the trial court to conclude that a seventy-year old woman who had undergone back surgery and suffers from tremors was unemployable.
 {¶ 20} David next argues that the trial court erred by failing to modify the life insurance requirement. This argument lacks merit as well. The divorce decree *Page 10 
incorporated the parties' separation agreement so the general rules of contract interpretation apply. Robins v. Robins, 10th Dist. No. 04AP-1152, 2005-Ohio-4969, ¶ 14, citing Monfredo v. Hillman, 4th Dist. No. 02CA13, 2003-Ohio-1151, ¶ 9; Keeley v. Keeley (July 21, 1997), 12th Dist. No. CA-97-02-013; Scott v. Scott (Apr. 29, 1994), 6th Dist. No. L-93-251. In determining a contract's interpretation, a reviewing court must give effect to the parties' intent. Cincinnati Ins. Co. v. CPSHoldings, Inc., 115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31, ¶ 7, citing Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. A contract is examined as a whole, and the court presumes that the parties' intent is reflected by the language of the policy. Id., citing Kelly v. Med. Life Ins. Co.
(1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." Id., citing Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus.
 {¶ 21} The parties' divorce decree provides, in pertinent part:
 IT IS FURTHER MUTUALLY AGREED AND ORDERED that as long as an alimony award exists, the plaintiff shall keep the defendant as an irrevocable beneficiary on his life insurance policies to the extent of $100,000, providing that plaintiff remains employed as a common pleas judge. IT IS FURTHER AGREED AND ORDERED that should the plaintiff retire, be defeated in an election, or re-enter private practice, then in any such event he shall keep the defendant as an irrevocable beneficiary on his life insurance policies to the extent of $45,000. The Husband shall give annually to the Wife notice of her *Page 11 designation as beneficiary thereon for the appropriate insurance companies which form the basis of this insurance coverage.
(July 13, 1988 Divorce Decree at 6). It is undisputed that David: (1) retired from the bench and (2) re-entered private practice. (Dec. 18, 2007 Tr. at 18-19, 61, 71). The plain language of the parties' agreement states that under either of these circumstances and as long as analimony award exists, David shall maintain Ruth as an irrevocable beneficiary on his insurance polices up to $45,000. Since David retired, re-entered private practice, and the trial court continued the alimony award, it did not err in also continuing David's life insurance obligation.
 {¶ 22} David next argues that the trial court erred in computing his income for modification purposes to include the amount of money he receives from additional service credit he purchased toward his retirement. David argues the divorce decree expressly provides that the calculation of his income is not to include these monies. We agree that the trial court abused its discretion by failing to properly calculate David's retirement income as provided in the divorce decree.
 {¶ 23} The divorce decree provides, in pertinent part:
 IT IS FURTHER MUTUALLY AGREED AND ORDERED that, if the alimony award is not terminated prior to the plaintiff's retirement, then the alimony award shall be re-evaluated at the plaintiff's retirement. The plaintiff's income shall be based upon his retirement income and any other supplemental income except and excluding any retirement income derived from plaintiff's purchasing additional years service towards his retirement income benefit which he may have purchased subsequent to June 1, 1988. The defendant's income shall be based upon any income which she is then receiving. *Page 12 
(July 13, 1988 Divorce Decree at 6). The trial court found that David's income consisted of $5,261.13 per month from his Ohio Public Employees Retirement System (OPERS) pension and $740.00 per month from social security. (Apr. 8, 2008 JE). The trial court cited plaintiff's exhibit four to support its finding with regard to David's OPERS pension benefit. Exhibit four is a December 4, 2007 letter addressed to David from OPERS, which indicated that his gross monthly benefit would be $5,261.13. (Plaintiff's Ex. 4). Two things, however, cast doubt on the trial court's $5,261.13 figure gleaned from exhibit four.
 {¶ 24} First, as David argues, he purchased approximately 8.754 years of service pursuant to R.C. 145.31. (Dec. 17, 2007 Tr. at 98); (Defendant's Ex. M). Any of David's pension benefit associated with the purchased service credit must be excluded from David's income for purposes of spousal support modification under the divorce decree. It is not clear whether exhibit four's $5,261.13 figure excludes these years of service purchased by David. In fact, David testified that the extra time he purchased increased his gross monthly benefit by about $1,200, but the trial court neglected to subtract this amount from the $5,261.13 found on exhibit four. (Dec. 17, 2007 Tr. at 100).
 {¶ 25} Second, exhibit four also indicates that David took a partial lump sum payment ("PLOP") from his retirement account. (Plaintiff's Ex. 4). Since David chose OPERS Plan A, the amount of David's PLOP could have been anywhere from $44,221.26 to $265,327.56, which would have significantly *Page 13 
decreased his monthly OPERS benefit. (Dec. 17, 2008 Tr. at 100); (Defendant's Ex. M). The PLOP received by David should have beenincluded in the trial court's calculation of David's retirement income since it is nothing more than an advance of his retirement income.
 {¶ 26} This Court is also concerned with the trial court's figure of $5,261.13 because of the trial court's expressed confusion over David's OPERS monthly benefit. The following dialogue took place at the hearing:
 THE COURT: Well, what was the PLOP, was it seventy? Fifty-eight?
 MR. KIRKLAND: What's that? MR. KINWORTHY: I have a PLOP?
 THE COURT: Yea, how much? I can't figure out whether it's seventy or netted to fifty-eight, or what happened. Your Exhibit M, or Defendant's Exhibit M, it looks like you took a PLOP. Well, let me back you up. Let me start over. How many years of service did you have in PERS? MR. KINWORTHY: Oh. . . THE COURT: When you retired. MR. KINWORTHY: Thirty. . . thirty-four. THE COURT: You had thirty-four. Well, at three percent a year that will give you about ninety percent of your pay. So, the reason you don't get ninety percent of the pay is because of the PLOP, right?
 MR. KINWORTHY: Judge, I'm not quite sure where you are going other. . .
 THE COURT: Here's my understanding of PERS. For every year in PERS you get about three percent of your gross income. So, at thirty-four years, three fours are twelve, that's about a hundred and two percent. But I think the max is like ninety, isn't it?
 MR. KINWORTHY: I. . . I. . . I'm not sure, Judge. THE COURT: Okay. When you retire you get approximately. . . you would be entitled to approximately ninety percent of your pay with thirty-four years of service. *Page 14 
 MR. KINWORTHY: Judge, with thirty-four years of service what I get is reflected in the exhibit showing my benefits. THE COURT: Yea, but that's after the PLOP, right? Your exhibit G shows your gross amount is as you testified, five thousand two hundred sixteen dollars. . . two hundred and sixty-one dollars. And Judge's wages this year, what, about a hundred and fourteen? At ninety percent you should be getting something like ninety grand, a little more with thirty-four years of service.
 MR. KINWORTHY: If you're asking does. . . THE COURT: You don't know. MR. KINWORTHY: I don't know.
 THE COURT: I'm. . . I'm not trying to . . . here's my understanding of PERS. Three percent per year. Thirty-three years is ninety-nine percent. The most you can get is about ninety-some odd percent. So, at thirty-four years of service you should get approximately ninety percent of your highest three years.
 MR. KINWORTHY: I don't know that. THE COURT: Okay. But you don't get that because you took a PLOP. Okay. I can't figure out from the paperwork what the gross and net amount of the PLOP was. MR. KIRKLAND: And I think Exhibit M. . . THE COURT: It looks like fifty-eight thousand eight hundred thirty three dollars and ninety cents um, after tax. MR. KINWORTHY: Well, I don't think. . . you know, whatever I purchased doesn't apply. If I utilize the PLOP, purchasing additional years, that's not to be construed as part of my income.
 THE COURT: Maybe I misunderstood. If. . . as I read your exhibit, if you have selected a partial lump sum option payment, or a PLOP. . . how much was the PLOP?
 MR. KINWORTHY: How much did I pay for it? How much does it generate in income?
 THE COURT: Uh, let me back up. Is a PLOP not a lump sum payment to you?
 MR. KINWORTHY: It is. But I don't receive a lump sum payment.
 THE COURT: Okay. MR. KINWORTHY: Uh, Judge. . . THE COURT: Go ahead. I'm listening. *Page 15 
 MR. KINWORTHY: Okay. My divorce decree specifically excludes any additional service credit that I buy. With a PLOP I did purchase additional service credit. I did not get any moneys.
 It was rolled over into what I ultimately will get as retirement.
 Now having said that, I. . . I want to state again for the record that that income, based upon my divorce decree is not to be considered in calculating uh, my retirement income.
 THE COURT: You have selected a partial lump sum option payment, what does that mean to you?
 MR.KINWORTHY: That means that I have utilized moneys that I previously contributed to purchase additional service and credit through the PLOP provisions.
 THE COURT: Okay. Thank you. And that was what, about eight thousand dollars?
 MR. KINWORTHY: No. Sixty-seven thousand dollars.
 THE COURT: Sixty-seven thousand dollars.
 MR. KINWORTHY: And aren't there two um. . . there should be two exhibits.
 THE COURT: Fifty-eight and eight.
 MR. KINWORTHY: Right.
 THE COURT: Okay. And that enhanced your monthly benefit by how much, if you know?
 MR. KINWORTHY: Uh, I. . . for the record I'm going to object, because it's not to be considered in my income.
 THE COURT: And your answer is?
 MR. KINWORTHY: Are you overruling my objection?
 THE COURT: Oh, yea.
 MR. KINWORTHY: Okay. My answer is, I'm not sure, but I think it's about twelve hundred dollars.
 THE COURT: Okay. Um, and you selected plan A?
 MR. KINWORTHY: That's correct.
(Dec. 17, 2007 Tr. at 96-100). It is clear from this discussion that the trial court did not understand how David could receive only $5,261.13/month from OPERS. The trial court reasoned that, with over thirty years of service, David should receive 90% of his annual salary. At ninety percent, David would be receiving *Page 16 
approximately $7,803.75/month (($104,050 x .90)/12)). (Dec. 17, 2007 Tr. at 76).[1] Ninety percent is a modest figure given that David testified he had approximately 43.1 years of service with his purchased service credit. (Dec. 17, 2007 Tr. at 102). With 34.35 years of service (earned service credit minus purchased service credit (43.1 — 8.754)) David should be receiving approximately $7,591.41/month.[2] Using this figure, the trial court's calculation would be $2,330.28 off target. Our point in calculating these figures is not to reach the precise number[3] that the trial court should have used; but rather, it is to demonstrate that the trial court's figure is untrustworthy.
 {¶ 27} Based upon these figures and calculations and the trial court's own reservations in calculating David's retirement income, this Court believes that the trial court's use of exhibit four's $5,261.13 figure was arbitrary, and thus, an abuse of discretion. We, therefore, remand this matter for a recalculation of David's income. In accordance with the divorce decree, the trial court shall calculate David's income toexclude any income monies associated with service credit *Page 17 
purchased by David subsequent to June 1, 1988 (8.754 years) but toinclude any amortized PLOP payments received by David.
 {¶ 28} Finally, David argues that the trial court abused its discretion by arbitrarily imputing $24,000/year for his private practice employment when: (1) he testified that he had not earned any income; (2) no testimony was presented regarding the average wages of a local solo law practice; and (3) no testimony was presented on the costs of maintaining a law firm. We find that this argument lacks merit. In its judgment entry, the trial court stated that: "if [David] earns only $2,000 a month practicing law he will have the same gross income he had at the time of the last hearing. Having chosen to engage in the practice of law he is capable of earning at least this amount." (Apr. 8, 2008 JE). However, the trial court subsequently stated: "[e]ven if [David] were not practicing law the current minimal order for spousal support would seem reasonable and appropriate under the circumstances of this case." (Id.). Clearly, the trial court found that the spousal support order was reasonable even assuming David was receiving only his pension and social security. Although we share David's reservation about the trial court's imputation of income without probative pertinent evidence, any error is harmless here given the trial court's subsequent reasonableness finding. For this reason, we cannot conclude that the trial court's imputation of income was an abuse of discretion.
 {¶ 29} David's second assignment of error is, therefore, sustained. *Page 18 
 {¶ 30} Having found David's first assignment of error is not properly before the Court, we overrule it. Having found error prejudicial to the appellant herein in the particulars assigned and argued in assignment of error two, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
Judgment Reversed and Cause Remanded
 ROGERS and SINGER, J.J., concur.
 (SINGER, ARLENE, Judge of the Sixth District, sitting byassignment.)
[1] Although David testified that his annual income was $104,050 at retirement, the Ohio Supreme Court website indicates that Common Pleas Judges made $118,050 in 2007.http://www.sconet.state.oh.us/introduction/salary/default.asp. Therefore, David's gross monthly benefit at ninety percent should be around $8,853.75 (($118,050 x .09)/ 12)). In any event, there is at least a $2,542.62 discrepancy between his estimated retirement benefit and the figure found in exhibit four.
[2] This amount was calculated using the OPERS estimated retirement benefit calculation. David's final average salary (FAS) equals the average of his three highest earning years, here the last three years. David's FAS = ($116,100 + $118,050 + $121,350)/3 = $118,500. David's estimated gross monthly retirement benefit = (.022 x $118,500 x 30) + (.025 x $118,500 x 4.35) = $91,096.88/year; $7,591.41/month.https://www.opers.org/members/traditional/benefits/calculation.shtml.
[3] We also note that the figures used herein may not reflect the fact that David chose Plan A, which may explain why his monthly benefit was lower than that expected by the trial court. This is an issue that will need to be further developed on remand to ensure an accurate calculation of income in accordance with the divorce decree. *Page 1