[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Simpkins v. Grace Brethren Church of Delaware, Ohio,* Slip Opinion No. 2016-Ohio-8118.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8118

SIMPKINS ET AL., APPELLANTS, *v.* GRACE BRETHREN CHURCH OF DELAWARE, OHIO, APPELLEE, ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Simpkins v. Grace Brethren Church of Delaware, Ohio,* Slip Opinion No. 2016-Ohio-8118.]

*Torts—Damages—R.C. 2315.18—Statutory cap on noneconomic damages constitutional as applied to minor victim of sexual assault—Oral and vaginal penetrations occurring within short period of time, within confined space, and without intervening factors constitute single "occurrence" for purposes of damages cap.*

(No. 2014-1953—Submitted December 15, 2015—Decided December 14, 2016.)

APPEAL from the Court of Appeals for Delaware County, No. 13 CAE 10 0073, 2014-Ohio-3465.

_____

**FRENCH, J.**

{¶ 1} This appeal presents as-applied constitutional challenges to the caps on noneconomic tort damages set out in R.C. 2315.18(B). In this opinion, we consider whether application of the damage caps to a minor who was the victim of sexual assault violates the minor's constitutional rights to a jury trial, to a remedy and open courts, to equal protection, and to due process. We also review and apply the statutory definition of "occurrence" in R.C. 2315.18(A)(5). We do not consider here whether there may exist any set of facts under which application of the statutory damage caps would prove unconstitutional. We conclude only that R.C. 2315.18(B) is constitutional as applied to the facts before us and that this case involves a single "occurrence" for purposes of applying the caps. We affirm the judgment of the Fifth District Court of Appeals.

### Background: noneconomic damage caps

{¶ 2} The General Assembly enacted R.C. 2315.18 as part of a broader tort-reform bill in Am.Sub.S.B. 80, 150 Ohio Laws, Part V, 7915 ("S.B. 80"), effective April 7, 2005. In support of those reforms, the General Assembly recognized the state's interest in "a fair, predictable system of civil justice" that preserves the rights of injured parties while curbing frivolous lawsuits, which increase the costs of doing business, threaten Ohio jobs, drive up consumer costs, and may hinder innovation. S.B. 80, Section 3(A)(3), 150 Ohio Laws, Part V, 8024.

{¶ 3} R.C. 2315.18 sets out procedures for imposing tort damages. When there is a jury trial, the jury returns a general verdict accompanied by answers to interrogatories. R.C. 2315.18(D). The verdict must specify the jury's determination of the total compensatory damages recoverable, as well as the portions of that total that represent economic and noneconomic losses. *Id*. The trial court then enters judgment for the total amount of economic damages determined by the jury and for the amount of noneconomic damages determined

by the jury, up to the limits established by R.C. 2315.18(B). R.C. 2315.18(B)(1), (B)(2), (E)(1).

{¶ 4} R.C. 2315.18(B)(2) establishes a cap on compensatory tort damages for "noneconomic loss," which includes but is not limited to "pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, disfigurement, mental anguish, and any other intangible loss." R.C. 2315.18(A)(4). R.C. 2315.18(B)(2) provides:

> [T]he amount of compensatory damages that represents damages for noneconomic loss * * * shall not exceed the greater of two hundred fifty thousand dollars or an amount that is equal to three times the economic loss, as determined by the trier of fact, of the plaintiff in that tort action to a maximum of three hundred fifty thousand dollars for each plaintiff in that tort action or a maximum of five hundred thousand dollars for each occurrence that is the basis of that tort action.

{¶ 5} The damage caps on noneconomic loss do not apply where the noneconomic loss is for "[p]ermanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system" or for "[p]ermanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities." R.C. 2315.18(B)(3)(a) and (b).

{¶ 6} In limiting the recovery of damages for noneconomic loss, the General Assembly noted that awards for pain and suffering "are inherently subjective" and that noneconomic damages may be inflated by "improper consideration of evidence of wrongdoing." S.B. 80, Section 3(A)(6)(d), 150 Ohio

Laws, Part V, 8028. It further stated that "[i]nflated damage awards create an improper resolution of civil justice claims," leading to increased litigation costs and insurance premiums. S.B. 80, Section 3(A)(6)(e), 150 Ohio Laws, Part V, 8028.

### Facts and procedural history

{¶ 7} This case began when appellants, Jessica Simpkins ("Simpkins") and her father, Gene Simpkins (collectively, "appellants"), sued Sunbury Grace Brethren Church ("Sunbury Grace"); Brian Williams; appellee, Grace Brethren Church of Delaware, Ohio ("Delaware Grace"); and Darrell Anderson in the Ross County Court of Common Pleas.

{¶ 8} The catalyst for appellants' claims occurred in March 2008 when Williams—then the senior pastor at Sunbury Grace—forced oral and vaginal intercourse with Simpkins, then a 15-year-old parishioner, in his office. Simpkins testified that she was seated in front of Williams's desk for a counseling session regarding her falling grades and unresolved issues at home regarding her parents' separation when Williams walked around the desk, put his hand on her shoulder, and told her to suck his penis. After repeatedly refusing, Simpkins eventually complied because she thought it was her only option to get out of the office. Simpkins testified that she then ran for the door, but Williams blocked and shut it. She testified that despite her protests, Williams kissed her, pushed her to the ground, removed her pants, and engaged in forced vaginal intercourse with her. Williams pled guilty to two counts of sexual battery in violation of R.C. 2907.03(A)(12) and was sentenced to two consecutive four-year prison terms.

{¶ 9} Appellants voluntarily dismissed their case without prejudice after settling their claims against Sunbury Grace for $90,000 and after the trial court had granted partial summary judgment in favor of Delaware Grace. Appellants refiled their claims against Delaware Grace and Anderson, a former senior pastor at Delaware Grace, in the Delaware County Court of Common Pleas. This appeal

concerns only appellants' claim against Delaware Grace for negligent hiring, retention, and supervision of Brian Williams—the only claim that survived summary judgment in the trial court.

{¶ 10} Prior to becoming the senior pastor of Sunbury Grace, Williams was employed by Delaware Grace as a youth pastor beginning in 1988, later becoming an associate pastor. In the fall of 2004, while still an employee of Delaware Grace, Williams worked on "planting" the new Sunbury Grace church, with Delaware Grace's knowledge and support and with assurance from the Delaware Grace Elder Board that it would support him in starting the new church. Delaware Grace provided the primary financial support for the creation of Sunbury Grace. And a pastor from Delaware Grace served as Williams's supervisor for at least a year after he became the senior pastor at Sunbury Grace.

{¶ 11} Appellants allege that Delaware Grace knew or should have known that Williams was unqualified to serve as a pastor and that Delaware Grace was negligent in retaining Williams as an employee and in assisting Williams to become the senior pastor at Sunbury Grace. In support of that claim, appellants allege that prior to the fall of 2004, Delaware Grace was aware of at least two incidents during which Williams, while in its employ, engaged in inappropriate sexual behavior with young women.

{¶ 12} The first incident allegedly occurred during a mission trip in the early 1990s. Jeffrey Gill, the senior pastor at Delaware Grace from 1982 to 2002, testified that a teenage girl from another Grace Brethren church accused Williams of touching her inappropriately while on the mission trip. Williams admitted to Gill that he rubbed the girl's shoulders, but he denied any impropriety. Gill and Williams met with the pastor from the other church, the teenage girl, and her mother, and Williams read a prepared statement of apology. After that meeting, Gill felt the accusations against Williams were resolved.

{¶ 13} The second alleged incident of sexual impropriety occurred in May 2002. Anderson, the former senior pastor at Delaware Grace, testified about a young woman's substantiated allegations of inappropriate sexual comments and touching by Williams. Although he did not make any notes regarding Williams's conduct, Anderson met with Williams and told him "how highly inappropriate" that conduct was. Anderson did not, however, report Williams's conduct to Gill, who was until June 2002 a senior pastor at Delaware Grace or to the Delaware Grace Elder Board, of which Williams was a member. Nor did he inform Gary Underwood, who was hired as Delaware Grace's senior pastor in October 2004, about the 2002 incident. Underwood, in fact, testified that he was unaware of any personnel records reflecting the allegations or incidents of inappropriate sexual conduct by Williams.

{¶ 14} In September 2004, Delaware Grace executed a letter of understanding with Williams regarding the planting of Sunbury Grace. At that time, Anderson, who had personal knowledge of the 2002 incident, was the acting senior pastor of Delaware Grace. Anderson also served as Williams's supervisor for a period of time following the execution of the letter of understanding, while Williams was attending to Sunbury Grace business. The Delaware Grace Elder Board supported Williams as head pastor of Sunbury Grace. Underwood, however, stated that he would not have supported Williams in his goal to become head pastor of Sunbury Grace had he known about Williams's prior incidents of inappropriate sexual misconduct.

{¶ 15} The trial court conducted a jury trial on appellants' claim of negligent hiring, retention, and supervision, and the jury returned a verdict for appellants. The jury found that Simpkins was entitled to $3,651,378.85 in compensatory damages, which included the following: $1,378.85 for past economic damages, $150,000 for future economic damages, $1,500,000 for past

noneconomic damages, and $2,000,000 for future noneconomic damages. The jury awarded Gene Simpkins $75,000 for loss-of-consortium.

{¶ 16} Before entering judgment, the trial court set off $1,378.85 based on appellants' settlement with Sunbury Grace, and it applied the cap in R.C. 2315.18(B)(2) to reduce Simpkins's noneconomic damages from $3.5 million to $350,000. Accordingly, the trial court entered a judgment of $500,000 for Simpkins and $75,000 for her father. The trial court subsequently granted Delaware Grace's request to reduce Simpkins's future economic damages from $150,000 to $60,000, but it gave Simpkins until 30 days after all appeals are concluded and the time for further appeal has expired to accept the reduction in lieu of a partial new trial limited to the amount of her future economic damages.

{¶ 17} Both appellants and Delaware Grace appealed, and the Fifth District affirmed in part, reversed in part, and remanded. 2014-Ohio-3465, 16 N.E.3d 687. The court of appeals held that the trial court erred by refusing to submit to the jury the issue of apportionment of liability between Williams and Delaware Grace and by granting summary judgment for Delaware Grace on appellants' claim for punitive damages. But the court of appeals rejected appellants' constitutional challenges to R.C. 2315.18(B)(2) as well as their argument that Simpkins's noneconomic damages arose out of two occurrences for purposes of applying the damage caps.

{¶ 18} This court accepted jurisdiction to consider two propositions of law. 142 Ohio St.3d 1464, 2015-Ohio-1896, 30 N.E.3d 973. The first contends that application of the R.C. 2315.18(B)(2) damage caps to minors who are victims of sexual assault violates the minors' rights under the Ohio Constitution to a jury trial, open courts and a remedy, due process, and equal protection. The second proposition of law concerns the definition of "occurrence" in R.C. 2315.18(A)(5) and asserts that distinct acts of sexual battery constitute separate occurrences that are subject to separate damage caps.

*Analysis*

**Constitutional Challenges**

{¶ 19} Appellants' first proposition of law states that as applied to minors who are victims of sexual assault, R.C. 2315.18 violates the constitutional rights to trial by jury, open courts and a remedy, due process of law, and equal protection. Although the proposition mentions both the Ohio Constitution and the United States Constitution, appellants' arguments relate solely to the Ohio Constitution.

{¶ 20} A party may challenge the constitutionality of a statute with either a facial challenge or an as-applied challenge. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 26. A facial challenge asserts that there is no conceivable set of circumstances in which the statute would be valid. *Id.* An as-applied challenge, on the other hand, alleges that application of the statute in a particular factual context is unconstitutional. *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 14, citing *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting). A holding that a statute is unconstitutional as applied prevents future application of the statute in a similar context, but it does not render the statute wholly inoperative. *Yajnik* at ¶ 14, citing *Ada* (Scalia, J., dissenting).

{¶ 21} In *Arbino*, this court rejected facial constitutional challenges to R.C. 2315.18. *Arbino* at paragraph one of the syllabus. We held, "R.C. 2315.18 does not violate the right to a trial by jury, the right to a remedy, the right to an open court, the right to due process of law, the right to equal protection of the laws, or the separation of powers, and is therefore constitutional on its face." *Id.* In light of that determination, appellants challenge R.C. 2315.18 as applied to the facts of this case. They contend that, as applied to minors who are victims of

sexual assault, R.C. 2315.18 violates the same constitutional rights—trial by jury, open courts and a remedy, due process, and equal protection—asserted in *Arbino.*

{¶ 22} A party raising an as-applied constitutional challenge must prove by clear and convincing evidence that the statute is unconstitutional when applied to an existing set of facts. *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 181. As in *Arbino*, we remain mindful when addressing appellants' constitutional challenges that all statutes are entitled to a strong presumption of constitutionality. *Arbino* at ¶ 25.

**Trial by jury**

{¶ 23} We begin our analysis of appellants' constitutional challenges with their argument that, as applied to Simpkins, the damage cap in R.C. 2315.18(B)(2) violates the right to a trial by jury. Article I, Section 5 of the Ohio Constitution states, "The right of trial by jury shall be inviolate * * *." Article I, Section 5 "protects a plaintiff's right to have a jury determine all issues of fact," including the extent of the plaintiff's damages. *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 34. Appellants contend that application of R.C. 2315.18(B)(2) in this case alters the jury's findings regarding damages. But our analysis in *Arbino* requires us to reject that argument.

{¶ 24} A law that prevents the jury from determining issues of fact or that allows a judge to substitute his or her own findings of fact for those of the jury is unconstitutional. *Id.* at ¶ 35. But a trial court may alter an award of damages as a matter of law "[s]o long as the fact-finding process is not intruded upon and the resulting findings of fact are not ignored or replaced by another body's findings." *Id.* at ¶ 37. R.C. 2315.18(B)(2) neither precludes the jury from determining factual issues nor permits the court to substitute its own findings of fact. *Arbino* at ¶ 40. Rather, courts "simply apply the limits as a matter of law to the facts found by the jury." *Id.*

{¶ 25} Despite our holding in *Arbino*, appellants argue that as applied to Simpkins, R.C. 2315.18(B)(2) alters the jury's findings regarding Simpkins's injuries. Seizing upon our statement in *Arbino* that the General Assembly made a policy choice to limit noneconomic damages for all but the most serious injuries, *id.* at ¶ 40, appellants argue that application of R.C. 2315.18(B)(2) alters the jury's finding that Simpkins suffered a catastrophic injury commensurate with those designated in R.C. 2315.18(B)(3). But even characterizing the jury's damage award as a finding that Simpkins suffered catastrophic injuries commensurate with those designated in R.C. 2315.18(B)(3), the trial court simply applied the law to the facts, as determined by the jury. Further, application of the damage caps does not affect Simpkins's right to a jury trial any differently than it affects any tort claimant whose damages are capped as a matter of law.

{¶ 26} Appellants implicitly acknowledge that their position is contrary to *Arbino*, but they do not offer any basis for avoiding stare decisis—the doctrine that "an established legal decision be recognized and followed in subsequent cases where the question of law is again in controversy." *Clark v. Snapper Power Equip., Inc.*, 21 Ohio St.3d 58, 60, 488 N.E.2d 138 (1986). A departure from stare decisis demands special justification, *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 44, citing *Wampler v. Higgins*, 93 Ohio St.3d 111, 120, 752 N.E.2d 962 (2001), and appellants offer no special justification for departing from *Arbino* here.

{¶ 27} For these reasons, appellants have not demonstrated by clear and convincing evidence that R.C. 2315.18 violates the right to a jury trial when applied to the facts of this case.

**Open courts and right to remedy**

{¶ 28} We next address appellants' argument that application of R.C. 2315.18(B)(2) to Simpkins violates her rights to open courts and a remedy. The constitutional rights to open courts and a remedy stem from Article I, Section 16

of the Ohio Constitution, which provides, "*All courts shall be open*, and every person, for an injury done him in his land, goods, person, or reputation, *shall have remedy* by due course of law, and shall have justice administered without denial or delay." (Emphasis added.) As with their arguments regarding the right to trial by jury, *Arbino* requires us to reject appellants' arguments regarding the rights to open courts and a remedy.

{¶ 29} The constitutional right to a remedy "requires an opportunity granted at a meaningful time and in a meaningful manner." *Hardy v. VerMeulen*, 32 Ohio St.3d 45, 47, 512 N.E.2d 626 (1987), overruled on other grounds, *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291. Article I, Section 16 prohibits statutes that "effectively prevent individuals from pursuing relief for their injuries," *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 44, but it "does not provide for remedies without limitation or for any perceived injury." *Ruther* at ¶ 12. The General Assembly has the authority to determine what causes of action the law will recognize, to alter the common law by abolishing, defining or limiting those causes of action, and to determine what remedies are available. *Id.* at ¶ 13-14. *See also Strock v. Presnell*, 38 Ohio St.3d 207, 214, 527 N.E.2d 1235 (1988) (holding that R.C. 2305.29's elimination of common-law amatory actions was constitutional because there was " 'no property or vested right in any of the rules of the common law, as guides of conduct' "), quoting *Leis v. Cleveland Ry. Co.*, 101 Ohio St. 162, 128 N.E. 73 (1920).

{¶ 30} Appellants claim that the reduction of the jury's award of noneconomic damages from $3.5 million to $350,000 denies Simpkins a meaningful remedy and violates her constitutional rights to open courts and a remedy. This court has recognized that the rights to open courts and a remedy become hollow when an individual is wholly foreclosed from relief after a verdict in his or her favor. *Arbino* at ¶ 45. But although R.C. 2315.18 limits the amount of noneconomic damages that a plaintiff may recover, it does not "wholly deny

persons a remedy for their injuries." *Id.* at ¶ 47. And the types of damages that remain available to plaintiffs—unlimited economic damages, up to $350,000 in noneconomic damages, and punitive damages—are meaningful remedies under the Ohio Constitution. *Id.*

**{¶ 31}** As with the right to trial by jury, appellants do not demonstrate that R.C. 2315.18 affects Simpkins differently than it does any other tort plaintiff. As we stated in *Arbino*, R.C. 2315.18(B)(2) does not foreclose a plaintiff from pursuing a claim nor does it completely obliterate the jury award. *Arbino* at ¶ 47. And neither the amount of the reduction of noneconomic damages nor appellants' assertion that minors who are victims of sexual assault will generally have noneconomic damages that far outweigh their economic damages demonstrates that those victims are denied a meaningful remedy.

**{¶ 32}** As a final argument that application of R.C. 2315.18 violates Simpkins's rights to open courts and a remedy, appellants state that they have incurred significant litigation expenses and attorney fees. Appellants are not unique in that regard, however, and the impact of litigation expenses and attorney fees does not render the available remedies unmeaningful. In Ohio, a prevailing party in a civil action may not recover attorney fees unless provided for by contract or statute or where the prevailing party demonstrates bad faith on the part of the unsuccessful party. *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7.

**{¶ 33}** Appellants have not demonstrated that application of R.C. 2315.18 in this case violates the constitutional rights to open courts and a remedy.

**Due course of law**

**{¶ 34}** Appellants next challenge application of R.C. 2513.18 under the "due course of law" clause in Article I, Section 16 of the Ohio Constitution. We have generally recognized the Ohio Constitution's "due course of law" provision as the equivalent of the Due Process Clause in the United States Constitution.

*Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 48, citing *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 422-423, 633 N.E.2d 504 (1994), citing *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544, 38 N.E.2d 70 (1941). This court recently deviated from the general rule and held that the Ohio Constitution's "due course of law" provision afforded a juvenile a broader right to counsel than that afforded by the Due Process Clause of the United States Constitution, *see State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 23-24, but appellants here do not argue in favor of broader protections under the Ohio Constitution. Instead, they acknowledge that it provides "the equivalent" of the federal Due Process Clause's protections.

**{¶ 35}** Unless a law challenged on due-process grounds restricts the exercise of a fundamental right, courts apply a rational-basis test, and the law is constitutional if it is reasonably related to a legitimate governmental interest. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 18, citing *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 57, 717 N.E.2d 286 (1999).

**{¶ 36}** In *Arbino*, after determining that R.C. 2315.18 did not violate the fundamental rights to a jury trial or the right to a remedy, we reviewed R.C. 2315.18 under the rational-basis test. *Arbino* at ¶ 49. Having rejected appellants' as-applied challenges based on the fundamental rights to a jury trial or the rights to open courts and a remedy, we apply the same deferential standard in our due-process analysis today. Accordingly, we must uphold R.C. 2315.18 " ' "[1] if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and [2] if it is not unreasonable or arbitrary." ' " (Brackets sic.) *Id.*, quoting *Mominee v. Scherbarth*, 28 Ohio St.3d 270, 274, 503 N.E.2d 717 (1986), quoting *Benjamin v. Columbus*, 167 Ohio St. 103, 146 N.E.2d 854 (1957), paragraph five of the syllabus.

{¶ 37} In enacting S.B. 80, the General Assembly reviewed evidence demonstrating that uncertainty related to the civil-litigation system was harming the economy: "It noted that noneconomic damages are inherently subjective and thus easily tainted by irrelevant considerations. The implicit, logical conclusion is that the uncertain and subjective system of evaluating noneconomic damages was contributing to the deleterious economic effects of the tort system." *Arbino* at ¶ 55. We thus held that the General Assembly acted in the public interest when, based on its review of the evidence, it enacted R.C. 2315.18—"a statute that bears a real and substantial relation to the general welfare of the public." *Id.* at ¶ 56, 58.

{¶ 38} Appellants argue that the real and substantial relationship between R.C. 2315.18 and the general public welfare that we found in *Arbino* does not extend to application of the damage caps to minors who are victims of sexual assault because those victims rarely suffer significant economic injury and will typically not suffer the types of injures required by R.C. 2315.18(B)(3) to avoid application of the damage caps. They maintain that the absence of an exception to the damage caps for these victims—who suffer real and substantial noneconomic damages—precludes a finding that application of the damage caps to that class of victims is substantially related to the general public welfare. But the status of a plaintiff does not diminish either the economic benefits of limiting noneconomic damages, as found by the General Assembly, or the substantial relationship that we found in *Arbino* between the statutory limitations and the benefits to the general public welfare.

{¶ 39} The second prong of the rational-basis test asks whether the challenged statute is arbitrary or unreasonable. Appellants again focus on the nature of sexual abuse and argue that it does not typically result in serious physical injury or pecuniary harm, but instead results in serious psychological injuries. They maintain that it is irrational to require a physical injury of the kind

listed in R.C. 2315.18(B)(3) in order for a plaintiff to fall within the statutory exception to the application of the damage caps.

**{¶ 40}** In *Morris v. Savoy*, this court concluded that statutory caps on general damages in medical claims that were enacted as a means of reducing soaring malpractice-insurance rates violated the right to due process. 61 Ohio St.3d 684, 686, 690-691, 576 N.E.2d 765 (1991). After noting the absence of any evidence of a rational connection between damage awards in excess of the caps and malpractice-insurance rates, this court held, " '[I]t is irrational and arbitrary to impose the cost of the intended benefit to the general public solely upon a class consisting of those most severely injured by medical malpractice.' " *Id.* at 691, quoting *Nero v. Pritchard*, 5th Dist. Stark No. CA-6560, 1985 Ohio App. LEXIS 7986, 9 (June 10, 1985). In *Arbino*, however, we distinguished *Morris*, stating that R.C. 2315.18 alleviates the concern of imposing the costs of the legislative benefit upon those most severely injured by allowing for limitless noneconomic damages for those suffering catastrophic physical injuries pursuant to the exceptions in R.C. 2315.18(B)(3). 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 60. Although minors who are victims of sexual assault may be unlikely to qualify for an exception to the application of the noneconomic-damage caps, the General Assembly's policy decision to exclude from the damage caps only those plaintiffs who suffer catastrophic *physical* damages does not place upon Simpkins and those similarly situated an undue portion of the cost of ameliorating the deleterious economic effects of the tort system, as the damage cap in *Morris* did.

**{¶ 41}** Appellants state that "[n]o person of good conscience" could characterize Simpkins's injuries as "noncatastrophic," but their argument misses the point. Appellants' as-applied challenge essentially asserts that the General Assembly acted unreasonably and arbitrarily by distinguishing between catastrophic physical and catastrophic nonphysical injuries for purposes of

applying caps on noneconomic damages. But in *Arbino*, we held that the General Assembly distinguished between plaintiffs who suffered the catastrophic physical injuries specified in R.C. 2315.18(B)(3) and plaintiffs suffering other injuries based on the conclusion that the injuries specified in R.C. 2315.18(B)(3) "offer more concrete evidence of noneconomic damages and thus calculation of those damages poses a lesser risk of being tainted by improper external considerations." *Arbino* at ¶ 72. In the end, R.C. 2315.18 does not affect Simpkins any differently than it affects any other victim whose injuries do not fall within the R.C. 2315.18(B)(3) exceptions to the damage caps.

{¶ 42} Appellants also seize upon the Fifth District's acknowledgment that "there may be nonphysical injuries the effects of which approximate those listed in R.C. 2315.18(B)(3)" as an acknowledgment that subjecting all nonphysical injures to a damage cap might be arbitrary and unreasonable. 2014-Ohio-3465, 16 N.E.3d 687, at ¶ 78. But we leave that question for another day. Because that situation does not exist here, we need not opine whether there may be some instance in which application of the damage caps to emotional injuries that rise to the level of the physical injuries excepted from the damage caps by R.C. 2315.18(B)(3) would violate due process.

{¶ 43} R.C. 2315.18(B)(3) excludes from the damage caps in R.C. 2315.18(B)(2) noneconomic damages for "[p]ermanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system" or for "[p]ermanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities." The exceptions to the damage caps in R.C. 2315.18(B)(3) require "extreme qualifications." *Weldon v. Presley*, N.D.Ohio No. 1:10 CV 1077, 2011 WL 3749469, *6 (Aug. 9, 2011). For example, the *Weldon* court noted a case in which the complete loss of sight in one eye fell short of "loss of a bodily organ system" because the plaintiff, who was able to partially see out of the other eye,

had not suffered a complete loss of her ocular system. *Id.*, citing *Williams v. Bausch & Lomb Co.*, S.D.Ohio No. 2:08-cv-910, 2010 WL 2521753, *4 (June 22, 2010).

{¶ 44} The Fifth District acknowledged the testimony of Dr. Jeffrey Smalldon, a psychologist who examined Simpkins, who testified that Simpkins suffers from post-traumatic-stress disorder and low-grade depression as a result of the sexual assault by Williams. The court also noted evidence that Simpkins is afraid of the dark, suffers from anxiety, and has trust issues with men. But it also recognized evidence that "Simpkins played basketball in high school and college, got good grades in college, is currently employed full-time, has not sought or participated in mental health treatment or counseling since 2008 and does not have current plans to seek treatment." 2014-Ohio-3465, 16 N.E.3d 687, at ¶ 78. Based on that evidence, the court concluded that Simpkins "is able to independently care for herself and perform life-sustaining activities." *Id.* While we do not doubt the reality and seriousness of Simpkins's emotional and psychological injuries as a result of Williams's conduct, Simpkins's noneconomic injuries do not meet the "extreme qualifications" that the law requires in order to avoid the operation of the damage caps in R.C. 2315.18(B)(2).

{¶ 45} For these reasons, we conclude that appellants failed to demonstrate by clear and convincing evidence that application of the R.C. 2315.18(B)(2) damage caps to Simpkins amounted to a violation of due process.

**Equal Protection**

{¶ 46} Appellants' final constitutional challenge asserts that, as applied here, R.C. 2315.18 violates the right to equal protection guaranteed by Article I, Section 2 of the Ohio Constitution. We have interpreted Article I, Section 2 of the Ohio Constitution to be the equivalent of the Equal Protection Clause in the United States Constitution. *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 63, citing *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272,

2005-Ohio-6505, 839 N.E.2d 1, ¶ 7. *But see State v. Mole*, ___ Ohio St.3d ___, 2016-Ohio-5124, ___ N.E.3d ___, ¶ 23 (finding greater protection under the Ohio Equal Protection Clause than under the federal Equal Protection Clause). Appellants here do not argue that Ohio's Equal Protection Clause provides greater protections than the federal Equal Protection Clause.

{¶ 47} As in *Arbino*, because R.C. 2315.18 involves neither a fundamental right nor a suspect class, we review the statute under the rational-basis test, which requires us to uphold it if it is rationally related to a legitimate governmental purpose. *See Arbino* at ¶ 66, citing *State v. Williams*, 88 Ohio St.3d 513, 530, 728 N.E.2d 342 (2000). Under rational-basis review, we grant "substantial deference" to the General Assembly's predictive judgment. *Id.* at 531.

{¶ 48} The guarantee of equal protection requires the existence of reasonable grounds for making a legislative distinction between those within and those outside a designated class. *Morris*, 61 Ohio St.3d at 691, 576 N.E.2d 765, citing *State v. Buckley*, 16 Ohio St.2d 128, 243 N.E.2d 66 (1968). A party who challenges a statute on equal-protection grounds must demonstrate "either that there was no rational basis for the creation of the class itself or that those within the class are not being treated equally in the furtherance of a legitimate governmental interest." *Id.* We will set aside legislative classifications only if they are "based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982).

{¶ 49} R.C. 2315.18 treats those suffering from the types of catastrophic physical injuries designated in RC. 2315.18(B)(3) differently from those with less-severe physical injuries by excluding the former class from application of the damage caps on noneconomic loss. *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 67. But we have already determined that the statutory classification is rationally related to the legitimate governmental purpose of

improving the state's civil justice system and its economy. *Id.* at ¶ 72. While specifically noting that noneconomic damages are "inherently subjective," "difficult to evaluate," and subject to the "influence of irrelevant factors," *id.* at ¶ 69, we held that the choice to limit damages for injuries that do not fall within the exceptions was "rational and based on the conclusion that catastrophic injuries offer more concrete evidence of noneconomic damages and thus calculation of those damages poses a lesser risk of being tainted by improper external considerations," *id.* at ¶ 72.

{¶ 50} Appellants argue that when applied to victims like Simpkins, R.C. 2315.18 creates a classification between those with the serious physical injuries designated in R.C. 2315.18(B)(3) and "those who, by the nature of the tort and the age of the victim, will rarely, if ever, suffer permanent physical injury but have and will continue to suffer permanent catastrophic nonphysical injuries." But the statutory classification remains the same regardless of the age of the victim or the nature of the tort. And the legislative classification applies the same to all persons; absent the physical injuries designated in R.C. 2315.18(B)(3), the statutory damage caps on noneconomic loss apply. Even if we accept appellants' characterization of Simpkins's injuries as catastrophic, the General Assembly's determination that the types of physical injuries listed in R.C. 2315.18(B)(3) offer more concrete evidence of noneconomic damages provides a rational basis for limiting noneconomic damages that are not accompanied by those types of serious physical injuries.

{¶ 51} In his dissenting opinion, Justice O'Neill expresses the broad concern, previously noted in Justice Pfeifer's dissent in *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 170, that the General Assembly lacks authority to place limits on jury-determined tort damages. He suggests that the authority to do so resides entirely in the constitutional-amendment process. But that view did not prevail in *Arbino*. And our decision in *Arbino* rejecting facial

challenges to the statutory caps on noneconomic tort damages in R.C. 2315.18(B) must guide our resolution of the as-applied challenges to that same statute here. As we have already acknowledged, there may exist a set of facts under which application of the statutory damage caps would prove unconstitutional—but this case does not present it. R.C. 2315.18, as applied here, does not violate Simpkins's right to equal protection under Article I, Section 2 of the Ohio Constitution.

## Occurrences

{¶ 52} Under their second proposition of law, appellants argue that even if the damage caps in R.C. 2315.18(B)(2) are constitutional, Simpkins suffered injuries as a result of *two* occurrences—oral penetration and vaginal penetration— and that a separate $350,000 damage cap applies to each occurrence. The trial court disagreed and held that Simpkins's injuries arose from "a single course of wrongful conduct at the same time and place" that constituted a single occurrence. The court of appeals affirmed the application of a single damage cap. 2014-Ohio-3465, 16 N.E.3d 687, at ¶ 92.

{¶ 53} The plain statutory language of R.C. 2315.18(B)(2) requires us to reject appellants' argument. A court's primary goal in statutory interpretation is to give effect to the legislature's intent. *Christe v. GMS Mgt. Co., Inc.*, 88 Ohio St.3d 376, 377, 726 N.E.2d 497 (2000). In determining that intent, the court first looks to and gives effect to the statutory language without deleting words used or inserting words not used. *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 39-40, 741 N.E.2d 121 (2001), citing *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973) and *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 524 N.E.2d 441 (1988), paragraph three of the syllabus. If the meaning of the statute is unambiguous, we must apply it as written. *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996).

{¶ 54} Except as provided in R.C. 2315.18(B)(3), a trial court may not enter judgment for noneconomic damages that exceed the applicable R.C. 2315.18(B)(2) damage cap. R.C. 2315.18(E)(1). The cap limits compensatory damages for noneconomic loss to the greater of $250,000 or "an amount that is equal to three times the economic loss, as determined by the trier of fact," to a maximum of $350,000 for each plaintiff or a maximum of $500,000 "for each occurrence that is the basis of that tort action." R.C. 2315.18(B)(2).

{¶ 55} Appellants argue that Williams's oral and vaginal penetrations of Simpkins constitute separate occurrences because they gave rise to separate criminal counts and were determined to be of dissimilar import in Williams's criminal case. They therefore argue that separate $350,000 caps should be applied to each occurrence. But even if appellants were correct that the existence of two "occurrences" would entitle Simpkins to noneconomic damages up to the damage cap for each occurrence despite the per-plaintiff maximum of $350,000, both the trial court and the court of appeals correctly held that this case involves a single "occurrence."

{¶ 56} Appellants cite *Madvad v. Russell*, 9th Dist. Lorain No. 96CA006652, 1997 WL 760898 (Nov. 19, 1997), as support for their multiple-occurrences theory, but that case is inapposite. The issue in *Madvad* was whether a separate limitations period applied to multiple sexual assaults that occurred throughout the victim's childhood. The Ninth District reasoned that, "[b]ecause one offensive contact is all that is required to commit a battery, it would seem that each abusive act resulting in an offensive contact constitutes one separate and independent tort." *Id.* at *2. Essentially, the court held that each assault gave rise to its own tort claim. But pursuant to R.C. 2315.18(A)(5), an "occurrence" for purposes of the R.C. 2315.18(B)(2) damage caps includes "*all claims* resulting from or arising out of any one person's bodily injury." (Emphasis added.) Thus, even if the vaginal and oral penetrations gave rise to separate tort *claims*, they

would nevertheless both be part of a single *occurrence* under R.C. 2315.18—as claims arising out of Simpkins's indivisible injury.

{¶ 57} The oral and vaginal penetrations in this case occurred within a short period of time, in a confined space, without intervening factors, and there is no evidence that Williams's separate criminal acts affected Simpkins differently. Dr. Smalldon did not attribute separate injury to the separate incidents of penetration, and he opined that Simpkins's post-traumatic stress disorder is a direct result "of *the incident* with Brian Williams." (Emphasis added.) For these reasons, we conclude that the trial court and the Fifth District appropriately applied a single damage cap under R.C. 2315.18(B).

### *Conclusion*

{¶ 58} Having rejected each of appellants' as-applied constitutional challenges to R.C. 2315.18 and having determined that the trial and appellate courts properly subjected appellants' claims to a single damage cap under R.C. 2315.18, we affirm the judgment of the Fifth District Court of Appeals.

Judgment affirmed.

KENNEDY, J., concurs.

LANZINGER, J., concurs in judgment only with an opinion.

O'CONNOR, C.J., and O'DONNELL, J., would dismiss the cause as improvidently allowed.

PFEIFER, J., dissents, with an opinion.

O'NEILL, J., dissents, with an opinion joined by PFEIFER, J.

_____

**LANZINGER, J., concurring in judgment only.**

{¶ 59} I concur in the court's judgment affirming the judgment of the Fifth District Court of Appeals, but I respectfully decline to join the court's constitutional analysis.

**{¶ 60}** The lead opinion notes that we have recently held that the Ohio Constitution provides a juvenile a broader right to counsel than that afforded by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 23-24. The lead opinion dismisses *Bode* as a case in which this court "deviated from the general rule," lead opinion at ¶ 34, and it accordingly bases its analysis on federal constitutional law. But *Bode* is just one instance in which we have stated that the Ohio Constitution can provide more protection than its federal counterpart. Indeed, the lead opinion later acknowledges that we recognized greater protection under the Ohio Equal Protection Clause than under the federal Equal Protection Clause in *State v. Mole*, ___ Ohio St.3d ___, 2016-Ohio-5124, ___ N.E.3d ___, ¶ 23.

**{¶ 61}** It is axiomatic that "[t]he Ohio Constitution is a document of independent force" and that under their own states' constitutions, "state courts are unrestricted in according greater civil liberties and protections to individuals and groups." *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. In addition to our holdings in *Bode* and *Mole*, in recent years we have also held that the Ohio Constitution "provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors," *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, syllabus; that the Ohio Constitution provides greater protection to criminal defendants than the Fifth Amendment to the United States Constitution, *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 48; that the Ohio Constitution provides protections from government appropriation of private property in certain circumstances when such takings are expressly permitted under federal law, *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, paragraph one of the syllabus and ¶ 5, 76-80; and that the Ohio Constitution requires the merger of allied offenses

and thereby affords juveniles greater double-jeopardy protections than those granted in the federal constitution, *In re A.G.*, ___ Ohio St.3d ___, 2016-Ohio-3306, ___ N.E.3d ___, ¶ 11-13. In line with these decisions, I would affirm that as a document of independent force, the Ohio Constitution contains additional protections not found in its federal counterpart.

{¶ 62} Although we held in *Bode* and *Mole* that the Ohio Constitution affords greater rights in certain circumstances in criminal cases, we have not previously held that the Ohio Constitution provides minors asserting tort claims greater protection than that afforded by the United States Constitution, and appellants do not present a compelling argument for us to do so now. I would, accordingly, hold that *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, controls in this case. For these reasons, I concur only in the court's judgment affirming the judgment of the court of appeals.

_____

**PFEIFER, J., dissenting.**

{¶ 63} I join Justice O'Neill's excellent dissent.

{¶ 64} "Tort reform," however misguided and unconstitutional, was designed to protect doctors and corporate interests. *See Arbino v. Johnson & Johnson*, 116 Ohio St.3d. 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 163 (Pfeifer, J., dissenting). Today, we learn that "tort reform," not surprisingly, had unintended consequences. It turns out that "tort reform" (and the justices who sanctioned it) also ensured that rapists and those who enable them will not have to pay the full measure of the damages they cause—even if they rape a child. It is past time for the General Assembly (and this court) to reconsider "tort reform" and return the authority to determine damages to juries, where it rightfully and constitutionally belongs.

_____

**O'NEILL, J., dissenting.**

{¶ 65} I must dissent from the court's decision on the first proposition of law. I cannot accept the proposition that a teenager who is raped by a pastor fits into a preordained formula for damages. Are we really ready to affirm the legislature's decision to say to a *future* victim, "we don't know you, we don't know the facts of your case, and we don't know what a duly empaneled jury is going to say, but your damages are a maximum of $500,000?" No parent of a teenage daughter would accept that outcome as being just.

{¶ 66} A plaintiff's damages, in terms of pain and suffering and future medical costs, could be astronomical. Or they could be nothing. Our system of civil justice leaves that question for the jury to decide, not the General Assembly. That is the point: a cookie-cutter approach simply does not work. In this case, a duly empaneled jury heard all the facts and found the damages to be over $3.6 million. By reducing that award to $500,000, the trial court has removed the jury from the process. If the General Assembly can limit damages for claims to $500,000, or $350,000, what would prevent it from limiting damages to $1? Would the court find that result to be constitutional? As stated by Justice Pfeifer in his well-reasoned dissent in *Arbino v. Johnson & Johnson*, 116 Ohio St.3d. 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 170, "the General Assembly does not have this power; only the people by the amendment process have this power. After today, what meaning is left in a litigant's constitutional right to have a jury determine damages?"

{¶ 67} Justice Pfeifer further noted in his dissent in *Arbino*:

"So long as the trial by jury is a part of our system of jurisprudence, its constitutional integrity and importance should be jealously safeguarded. The right of trial by jury should be as inviolate in the working of our courts as it is in the wording of our

Constitutions." *Gibbs v. Girard* (1913), 88 Ohio St. 34, 47, 102 N.E. 299. Instead of jealously safeguarding the right to trial by jury, the majority opinion in this case eviscerates it by holding constitutional a statute that enables courts to "enter judgments in disregard of the jury's verdict." *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 422, 633 N.E.2d 504. Instead of jealously safeguarding the right to trial by jury, the majority opinion employs shallow reasoning and shoddy logic in concluding that juries can meaningfully determine only facts that do not conflict with predetermined assessments of the General Assembly. Instead of jealously safeguarding the right to trial by jury, the majority opinion "cleans the scalpel for the legislature to cut away unrestrainedly at the whole field of tort redress." *Meech v. Hillhaven W., Inc.* (1989), 238 Mont. 21, 52, 776 P.2d 488 (Sheehy, J., dissenting).

*Id*. at ¶ 163.

{¶ 68} The only way to bypass the Ohio Constitution and make changes to the tort system in Ohio would be by constitutional amendment. Unless and until that happens, arbitrary caps on damages are unconstitutional.

{¶ 69} This child was raped in a church office by a minister, and a duly empaneled jury established an appropriate level of compensation for the loss of her childhood innocence. We have no right to interfere with that process. Shame on the General Assembly. The children are watching. And I for one do not like what they are seeing.

{¶ 70} I would reverse the decision of the trial court and reinstate the judgment of the jury.

PFEIFER, J., concurs in the foregoing opinion.

26

_____

The Fitch Law Firm and John K. Fitch; David A. Fitch; Taft Stettinius & Hollister, L.L.P., Stephen C. Fitch, and Celia M. Kilgard, for appellants.

Weston Hurd, L.L.P., and W. Charles Curley, for appellee.

Harris, Meyer, Heckman & Denkewalter, L.L.C., and Darrell L. Heckman, urging reversal for amicus curiae, National Center for Victims of Crime.

The DiCello Law Firm and Robert F. DiCello, urging reversal for amicus curiae, Ohio Association for Justice.

Tucker Ellis, L.L.P., Susan M. Audey, and Benjamin C. Sassé, urging affirmance for amicus curiae, Academy of Medicine of Cleveland & Northern Ohio.

Bricker & Eckler, L.L.P., Anne Marie Sferra, and Kara Herrnstein, urging affirmance for amici curiae, Ohio Alliance for Civil Justice and Ohio Association of Civil Trial Attorneys.

_____