OPINION *Page 2 
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry. The plaintiff-appellant, Sharon L. Hartley, appeals the judgment of the Logan County Common Pleas Court granting summary judgment in favor of the defendant-appellee, Michael Miller, administrator/executor of the estate of Milton E. Hartley.
 {¶ 2} Sharon and Milton were married in Springfield, Ohio on September 14, 1962. On November 18, 1993, the Montgomery County Common Pleas Court Domestic Relations Division filed its final decree dissolving the Hartleys' marriage. The domestic relations court approved the separation agreement the parties had executed on September 27, 1993 and incorporated it into the final decree. The separation agreement provided for certain sums of money to be paid to Sharon either upon Milton's death, his separation from employment with the Elder-Beerman Stores Corporation, or the sale of the corporation. Attached to the separation agreement was an unsecured promissory note executed by Milton in which he promised to pay to Sharon the amount of $400,000 "together with interest to be accrued on such sum at the rate of Nine Percent (9%) per annum, compounded annually retroactively from January 1, 1993." Milton also executed *Page 3 
a letter to Elder-Beerman's Chief Operations Officer specifying that his deferred compensation benefits were to be paid to co-trustees for Sharon.
 {¶ 3} Elder-Beerman filed for bankruptcy in 1995, and in 1996, Milton filed a proof of claim against the company for unpaid salary and deferred compensation benefits. In 1999, Milton agreed to receive a settlement from Elder-Beerman. Of the settlement, Sharon received $250,001.25 in cash and 38,121 shares of Elder-Beerman stock, which had been valued at $6.25 per share; a total distribution of $488,257.50. At the time Sharon received the distribution, she and Milton executed a handwritten agreement recording the transaction and preserving Sharon's rights under the final decree of dissolution.
 {¶ 4} When Milton was deceased in 2006, Sharon filed a presentation of claim against his estate in Logan County, where Milton had resided prior to his death. Miller, as the executor of Milton's estate, rejected Sharon's claim in October 2007. On November 1, 2007, Sharon filed a complaint in Logan County Common Pleas Court claiming that Milton's estate owed her additional funds under the final decree of dissolution, including both the separation agreement and the promissory note, and that Miller had wrongfully refused her claim, filed pursuant to R.C. 2117.06, against Milton's estate. On November 28, 2007, Miller answered the complaint.
 {¶ 5} After filing his responses to Sharon's requests for admissions and her interrogatories and requests for production of documents, Miller filed a motion *Page 4 
for summary judgment arguing that the distribution to Sharon was contractually restricted to Milton's Deferred Compensation Plan II benefits, which had been extinguished as a result of the settlement with Elder-Beerman and the distribution that had been made to Sharon in November 1999. The following documents were attached to the motion: a copy of the final decree of dissolution, including all exhibits that had been attached thereto; a copy of Milton's proof of claim that had been filed against Elder-Beerman; a copy of the handwritten agreement executed by Milton and Sharon on November 4, 1999; Miller's affidavit with Milton's tax returns as exhibits thereto; a copy of Sharon's presentation of claim against Milton's estate; a copy of the notice of rejection of claim; and a copy of the estate inventory and appraisal.
 {¶ 6} On June 30, 2008, Sharon filed her reply to Miller's motion for summary judgment. In her memorandum, Sharon argued that the separation agreement did not restrict her distribution to a specific asset. Attached to the memorandum were Sharon's "affidavit;" a copy of the final decree of dissolution, including all attachments thereto; a copy of the handwritten agreement executed by Milton and Sharon on November 4, 1999; a copy of the presentation of claim against Milton's estate; and a copy of the notice of rejection of claim.
 {¶ 7} On September 25, 2008, the trial court filed its judgment entry granting summary judgment to Miller. Sharon appeals the judgment of the trial court and asserts four assignments of error for our review. *Page 5 
 Assignment of Error No. 1 The trial court erred by finding summary judgment because questions of fact remained based on the conflicting affidavits of the parties and no opportunity for a trial [sic], and therefore reasonable minds could come to differing conclusions.
 Assignment of Error No. 2 The trial court erred by not considering all the evidence, namely the 1999 note drew up [sic] by the administrator, Michael Miller, because that note was an enticement for Ms. Hartley to sign reserving her rights and carrying out the agreement of the parties, and further that note was not extrinsic evidence, but rather its own agreement, independent of the separation agreement.
 Assignment of Error No. 3 The trial court erred by assuming the promissory note executed by the decedent and Appellant called for the money to be paid from "Deferred Compensation Plan I or II" when the Promissory Note clearly and unambiguously does not state that the money was to be paid from a certain source and a careful reading of section 14 of the separation agreement does not call for the money to [be] paid from a certain source.
 Assignment of Error No. 4 The trial court erred by assuming the total settlement received by Mr. Hartley was $550,000 based solely on his tax returns with no other proof of the settlement and Ms. Hartley paid taxes on her half the [sic] settlement, contrary to the Trial Court's assumption.
 {¶ 8} For ease of analysis, we elect to address the assignments of error out of order. In the second assignment of error, Sharon contends that the trial court erred by excluding as parol evidence the handwritten agreement executed on *Page 6 
November 4, 1999 by herself and Milton. In its judgment entry, the trial court stated, "[t]he Court finds that the separation agreement is not ambiguous; no extrinsic evidence is needed to interpret the provisions. The 1999 document relied upon by Plaintiff is extrinsic evidence and shall not be considered." (J. Entry, Sep. 25, 2008, at 2).
 {¶ 9} "The parol-evidence rule is a principle of common law providing that `a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier orcontemporaneous agreements that might add to, vary, or contradict the writing.'" (Emphasis added). Bellman v. Am. Internatl. Group,113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, at ¶ 7, quoting Black's Law Dictionary (8th Ed. 2004) 1149; see also Galmish v. Cicchini (2000),90 Ohio St.3d 22, 26, 734 N.E.2d 782, quoting 11 Williston on Contracts (4th Ed. 1999) 569-570, Section 33:4. "The rule `operates to prevent a party from introducing extrinsic evidence of negotiations that occurredbefore or while the agreement was being reduced to its final written form,' and it `assumes that the formal writing reflects the parties' minds at a point of maximum resolution and, hence, that duties and restrictions that do not appear in the written document * * * were not intended by the parties to survive.'" (Emphasis added). Id., quoting Black's Law Dictionary at 1149, 1150. See also Ed Schory Sons, Inc. v.Francis (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074. "The parol evidence rule does not apply to evidence of subsequent modifications of a written *Page 7 
agreement or to waiver of an agreement's terms by language or conduct."Star Leasing Co. v. G S Metal Consultants, Inc., 10th
Dist. No. 08AP-713, 2009-Ohio-1269, at ¶ 29, citing Tri State AsphaltCorp. v. Ohio Dept. of Transp. (Apr. 11, 1995), 10th Dist. No. 94API07-986, citing Norris v. Royal Indemn. Co. (1984),20 Ohio App.3d 206, 208, 485 N.E.2d 754.
 {¶ 10} A trial court's determination concerning the admissibility of extrinsic evidence will not be overturned absent an abuse of discretion.Atelier Dist., LLC v. Parking Co. of Am., Inc., 10th
Dist. No. 07AP-87, 2007-Ohio-7138, at ¶ 17, citing Ohio Historical Soc.v. Gen. Maintenance Eng. Co. (1989), 65 Ohio App.3d 139, 147,583 N.E.2d 340, citing C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578; Shifrin v. Forest City Ent., Inc. (1992),64 Ohio St.3d 635, 597 N.E.2d 499, at syllabus. The handwritten agreement between Sharon and Milton stated:
 This agreement, dated the 4th of November, 1999 is for the sole purpose of authorizing, [sic] Bieser, Greer Landis LLP, as trustee, to make distribution to Sharon L. Hartley, the sums described below. Such distribution is to be made pursuant to instructions to be provided by Sharon L. Hartley. The distribution is to be made from the settlement proceeds arising from the action brought by Milton E. Hartley against the Elder* * * [missing text].
 Bieser, Greer Landis LLP harmless from any damages resulting from their actions pursuant to this agreement. It is also understood that this agreement does not constitute a release by Sharon L. Hartley of any claims she may have against Milton E. Hartley pursuant to the Separation Agreement between these two individuals dated the 27th of September, 1993. *Page 8 
 The distribution to Sharon L. Hartley * * * [missing text]
 — 38,121 shares of the stock of The Elder-Beerman Stores, Co.
 and,
 — $250,001.25 in cash.
 Agreed to by:
 [purported signatures of Sharon L. Hartley and Milton E. Hartley, and a witness].
 All parties to this Agreement should be on notice that Sharon L. Hartley will confer with her counsel as to what the above amounts represent the amount due her under the above referenced Separation Agreement. [initialed by Sharon L. Hartley].
(Emphasis in original). (Mot. for Summ. J., May 30, 2008, at Ex. C; Pl.'s Reply to Def.'s Mot. for Summ. J., Jun. 30, 2008, at Ex. 6). Because the handwritten agreement, executed on November 4, 1999, was drafted after the separation agreement, which was filed as part of the final divorce decree on November 18, 1993, the handwritten agreement clearly does not satisfy the definition of parol evidence. Further, the handwritten agreement is not inconsistent in any way with the terms of the separation agreement. The agreement clearly documents the payment made by Milton to Sharon and specifically preserves Sharon's rights under the separation agreement. Having given no reason or cited any authority for its decision to exclude the handwritten agreement as extrinsic evidence, the trial *Page 9 
court abused its discretion. However, based on the following analysis of the first, third, and fourth assignments of error, the trial court's exclusion of the November 4, 1999 agreement is harmless error. Civ. R. 61. The second assignment of error is overruled.
 {¶ 11} An appellate court reviews a trial court's summary judgment decision de novo, independently and without deference to the trial court's decision. Ohio Govt. Risk Mgt. Plan v. Harrison,115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, at ¶ 5, citing Comer v.Risko, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 8. Summary judgment is appropriate only "when the requirements of Civ. R. 56(C) are met." Adkins v. Chief Supermarket, 3d Dist. No. 11-06-07,2007-Ohio-772, at ¶ 7. The party moving for summary judgment must establish: (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Id., citing Civ. R. 56(C); Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,653 N.E.2d 1196, at paragraph three of the syllabus. In ruling on a motion for summary judgment, a court may not "weigh evidence or choose among reasonable inferences * * *." Id., at ¶ 8, citing Jacobs v.Racevskis (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Rather, the court must consider the above standard while construing all evidence in favor of the non-movant. Jacobs, at 7. *Page 10 
 {¶ 12} The party moving for summary judgment must identify the basis of the motion to allow the non-movant a "meaningful opportunity to respond." Mitseff v. Wheeler (1988), 38 Ohio St. 3d 112, 116,526 N.E.2d 798. In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact" and must support its assertion with affidavits or other evidence as allowed by Civ. R. 56(C). Id. at 115, citing Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, citingHamlin v. McAlpin Co. (1964), 175 Ohio St. 517, 519-520, 196 N.E.2d 781;Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the non-moving party has a "reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * *." Dresher, at 294.
 {¶ 13} In his motion for summary judgment, Miller alleged that Milton had received a settlement of approximately $550,000 against Elder-Beerman. Miller claimed that Sharon was not entitled to relief against the estate because the separation agreement provided that she would receive Milton's Deferred Compensation Plan II benefits. Miller argued that Sharon's claim would not be successful unless she could prove either that Milton received Deferred Compensation Plan II benefits during his lifetime that he had not paid to her, or that the estate had received Deferred Compensation Plan II benefits that had not *Page 11 
been paid to her. Miller maintained that the Deferred Compensation Plan II benefits were extinguished upon Milton's distribution of his settlement proceeds to Sharon in November 1999.
 {¶ 14} In the first assignment of error, Sharon contends that the trial court erred by granting summary judgment to Miller because there were conflicting affidavits filed in the case; specifically as to the amount of money Milton had received as a settlement. In the fourth assignment of error, Sharon argues that the trial court erred when it "assumed" based on Milton's tax returns that the total settlement received by Milton against Elder-Beerman was approximately $550,000.
 {¶ 15} Disregarding for now any analysis of whether Sharon's distribution was restricted to Milton's Deferred Compensation Plan II, we resolve the first and fourth assignments of error together. Attached to Miller's motion for summary judgment was his affidavit, in which he stated that he had prepared Milton's federal tax returns for tax years 1999 through 2005. (Mot. for Summ. J., at Ex. D, ¶ 2). Miller stated that in 1999, Milton reported "other income" of $549,691, which represented cash and stock payments made to him as his settlement with Elder-Beerman. (Id. at ¶ 3). Miller stated that Milton did not receive any other money from Elder-Beerman, and none of the tax returns filed between 2000 and 2005 reported any additional income. (Id. at ¶ 4-5). Finally, Miller stated that Milton had not received any additional cash and/or stock from Elder-Beerman. *Page 12 
(Id. at ¶ 6). The "affidavit" that Sharon claims created genuine issues of material fact was filed with her reply to Miller's motion for summary judgment and stated in toto, "I, Sharon L. Hartley, first being duly sworn and cautioned, all in accordance with the law, state and depose that the facts contained in the foregoing are true as she verily believes." The "affidavit" was signed by Sharon and notarized.
 {¶ 16} Civ. R. 56(E) provides:
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
(Emphasis added). Sharon's "affidavit" is not an affidavit within the meaning of Civ. R. 56(E), as it merely relies on the facts set forth in her responsive memorandum.
 {¶ 17} In both the first and fourth assignments of error, Sharon contends that the trial court erred when it considered only Milton's tax returns as proof of the total settlement amount. Sharon contends that the approximately $550,000 of *Page 13 
other income on Milton's 1999 tax return signifies the portion of the settlement he retained. She claims that she also reported her share of the settlement on her 1999 tax returns, which evidence establishes that the settlement with Elder-Beerman was approximately $900,000. We note first that Sharon did not make any argument to the trial court concerning her tax returns, and generally a party may not raise new arguments for the first time on appeal. Marysville Newspapers, Inc. v.Delaware Gazette Co., Inc., 3d Dist. No. 14-06-34, 2007-Ohio-4365, at ¶ 23 (citations omitted). Furthermore, copies of Sharon's tax returns were never made a part of the record.
 {¶ 18} After striking Sharon's affidavit, the remaining evidence establishes that Milton received a settlement of approximately $550,000 from Elder-Beerman in 1999 and no more. Aside from Sharon's unsupported assertions, there is simply no evidence in the record that Milton received more than approximately $550,000 as his settlement. Sharon has failed to rebut Miller's evidence as specified in Civ. R. 56(E). Accordingly, the trial court did not err when it granted summary judgment determining the value of the settlement received by Milton against Elder-Beerman. The first and fourth assignments of error are overruled.
 {¶ 19} In the third assignment of error, Sharon contends that the trial court erred when it interpreted the separation agreement so as to limit her $400,000 distribution to the Deferred Compensation Plan II. On appeal, Sharon argues that *Page 14 
the promissory note was a cognovit note, which evidences her and Milton's intentions that the distribution not be limited to or by one specific asset.
 {¶ 20} General rules of contract interpretation apply to separation agreements incorporated into the trial court's final decree of divorce.Kinworthy v. Kinworthy, 3d Dist. No. 1-08-43, 2009-Ohio-187, at ¶ 20
(citations omitted).
 When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos. (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898, citing Employers' Liab. Assur. Corp. v. Roehm (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the * * * contract as a whole and presume that the intent of the parties is reflected in the language used in the [contract]. Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the [contract] unless another meaning is clearly apparent from the contents of the [agreement]. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. Gulf Ins. Co. v. Burns Motors, Inc. (Tex.2000), 22 S.W.3d 417, 423.
Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849,797 N.E.2d 1256, at ¶ 11. "The construction of written contracts and instruments of conveyance is a matter of law." Alexander, at paragraph one of the syllabus.
 {¶ 21} The separation agreement, which the trial court adopted and incorporated into the divorce decree, provided the following: *Page 15 
 XII. DEFERRED COMPENSATION PLAN 12.1 HUSBAND'S current Employment Agreement with The Elder-Beerman Store Corp. provides for a Deferred Compensation Plan consisting of Part I with a value approximating Eighty Three Thousand Four Hundred Dollars ($83,400.00) to be paid to HUSBAND upon his termination of employment together with interest accruing at the rate of nine percent (9%) per annum, compounded annually. Subject only to the other provisions of this Agreement, HUSBAND shall retain such Deferred Compensation Plan Part I as his sole and exclusive property.
 * * *
 12.2 HUSBAND'S current employment agreement with The Elder-Beerman Stores Corp. provides for a Deferred Compensation Plan Part II accruing a bonus at the end of each fiscal year in an amount equal to the bonus compensation for that fiscal year actually received by HUSBAND, together with interest at the rate of nine percent (9%) per annum, compounded annually. Such Deferred Compensation Account Part II has a balance approximating Four Hundred Seventy Five Thousand Dollars ($475,000.00). It is the intention of the parties that at such time as HUSBAND is entitled to receive the proceeds of such account that WIFE will receive Four Hundred Thousand Dollars ($400,000.00) of such account plus interest as set forth in the hereinafter referred to Promissory Note and HUSBAND will receive the balance of such account. Such Deferred Compensation Account shall be reconciled by HUSBAND delivering to WIFE his Promissory Note as set forth in Article XIV of this Agreement.
 XIII. EXECUTIVE RETIREMENT PLAN 13.1 HUSBAND is a participant in The Elder-Beerman Stores Corp. Executive Retirement Plan which provides that upon retirement, HUSBAND will be paid an amount equal to Five Thousand Eighty Seven Dollars and Fifty-Eight Cents ($5,087.58) for each month of his employment with The Elder-Beerman Stores Corp. Such Retirement Plan vests only upon *Page 16 retirement after the age of sixty-two (62) or termination for any reason other than cause prior thereto. Subject to HUSBAND'S payment to WIFE of the sum as set forth in Article XIV of this Agreement HUSBAND shall retain his ownership interest in such Retirement Plan as his sole and exclusive property.
 XIV. DEFERRED COMPENSATION BENEFITS 14.1 Simultaneously with the execution of this Agreement, HUSBAND shall execute a Promissory Note payable to WIFE in the amount of Four Hundred Thousand Dollars ($400,000.00), such Note to be effective retroactive to January 1, 1993 and to provide for interest to be accrued on such sum at the rate of Nine Percent (9%) per annum, compounded annually. Such Note shall be in form and substance as set forth in Exhibit "B" attached hereto and made a part hereof. Such Note shall become immediately due and payable upon the first to happen of the following events:
 (1) The death of HUSBAND;
 (2) HUSBAND'S retirement from The Elder-Beerman Stores Corp. or his otherwise leaving the employ of such Company;
 (3) The sale of The Elder-Beerman Stores Corp. as more particularly set forth in HUSBAND's Contract of Employment.
 14.2 As an inducement to WIFE to accept HUSBAND'S unsecured Promissory Note as aforesaid, HUSBAND shall, simultaneously with the execution of this Agreement, cause an irrevocable letter to be delivered to The Elder-Beerman Stores Corp. instructing it to make payment of all deferred compensation benefits owing to HUSBAND from the Executive Retirement Plan and/or Deferred Compensation Plan Part I and/or Part II to Guy M. Hild and Fred M. Izenson, as Co-Trustees, or their successors. HUSBAND'S irrevocable letter of instruction shall be in form and substance as set forth in Exhibit "C" attached hereto and made a part hereof. In addition, a letter of Agreement between the Co-Trustees and HUSBAND shall be executed in form and substance as set forth in Exhibit "D" attached hereto and made a part hereof. *Page 17 
 14.3 As a further inducement to WIFE to accept HUSBAND'S unsecured Promissory Note, HUSBAND hereby specifically reserves to the Court of Common Pleas, Division of Domestic Relations, Montgomery County, Ohio, the right to issue such further court orders as are necessary to protect WIFE in the payment of the sums called for in the aforementioned Promissory Note, including, but not limited to the right to order The Elder-Beerman Stores Corp. to pay HUSBAND'S deferred compensation balances into Court to be used to satisfy the then outstanding sums of principal and interest owing to WIFE, and to make all other orders as are necessary and proper.
 * * *
 XXVI. CONCLUSIVE AGREEMENT AS TO RIGHTS
 * * *
 26.2 This Agreement shall be fully binding upon the heirs, next of kin, executors and administrators of the parties.
 XXVII. GENERAL PROVISIONS * * *
 The captions contained in this Agreement are for convenience only and are not intended to limit or define the scope or effect of any provision of this Agreement.
The promissory note, which was attached to the separation agreement as Exhibit "B" stated:
 For value received, the undersigned does hereby promise to pay to the order of Sharon L. Hartley, the principal sum of Four Hundred Thousand Dollars ($400,000.00) together with interest to be accrued on such sum at the rate of Nine Percent (9%) per annum, compounded annually retroactively from January 1, 1993 until such sum is paid in full. Such principal sum together *Page 18 with all accrued interest shall become immediately due and payable upon the first to happen of the following events:
 1. The death of Milton E. Hartley
 2. The retirement of Milton E. Hartley from The Elder-Beerman Stores Corp. or his otherwise leaving the employ of such Company;
 3. The sale of The Elder-Beerman Stores Corp. as more particularly set forth in a contract of employment between Milton E. Hartley and such Corporation.
Additional language in the note attempted to create a cognovit note.[1]
 {¶ 22} Generally, a party may assert separate causes of action on a promissory note and a contract, which Sharon did in this case. GrayPrinting Co. v. Blushing Brides, L.L.C., 10th Dist. No. 05AP-646, 2006-Ohio-1656, at ¶ 30 (citations omitted). The Supreme Court of Ohio has stated that "`[a] contract and a promissory note executed at the same time are to be construed together.'" Edward A. Kemmler Mem.Found. v. 691/733 East Dublin-Granville Road Co. (1992)62 Ohio St.3d 494, 500, 584 N.E.2d 695, quoting 5 Anderson, Uniform Commercial Code (3 Ed. 1984) 368-369, Section 3-119:6. See also Preferred Tax FinancialServ., Inc. v. Mark W. Boslett, Inc., 9th Dist. No. 22801, 2006-Ohio-2690, at ¶ 16; Zito v. Tamborski, 11th
Dist. No. 2003-L-178, 2005-Ohio-1799, at ¶ 25. In reading the terms of the separation agreement and the terms of the promissory note in pari materia, Sharon's and Milton's intentions are clear. As a *Page 19 
matter of law, the unambiguous language of the separation agreement provides that Sharon was to receive $400,000 plus 9% interest per annum, compounded annually, retroactive to January 1, 1993. The distribution was payable from Deferred Compensation Plan I benefits and/or Deferred Compensation Plan II benefits and/or the Executive Retirement Bonus. However, in the event that the distribution was not made from any of those funds, the Montgomery County Common Pleas Court Domestic Relations Division had jurisdiction to order the distribution from Milton's other assets. Therefore, the trial court erred in holding that Sharon's distribution under the separation agreement and promissory note had been restricted to Milton's Deferred Compensation Plan II benefits.
 {¶ 23} As discussed above, the evidence submitted by Miller established that Deferred Compensation Plan I benefits, Deferred Compensation Plan II benefits, and the Executive Retirement Bonus had been extinguished or exhausted following Milton's settlement with Elder-Beerman, and his subsequent distribution to Sharon. Also as discussed above, the handwritten agreement of November 4, 1999 preserved Sharon's rights under the separation agreement and recorded her receipt of $250,001.25 in cash and 38,121 shares of Elder-Beerman stock. Sharon presented no evidence to create a genuine issue of material fact as to the exhaustion of the specified assets from which she was to be paid. Likewise, Sharon did not present any evidence that the Montgomery County Common Pleas Court Domestic Relations Division had ordered the distribution to be made by any *Page 20 
other means. Although the trial court misinterpreted the terms of the separation agreement, the error was harmless in light of Sharon's failure to produce appropriate evidence to create a genuine issue of material fact. Having found no genuine issues of material fact; that the movant is entitled to judgment as a matter of law; and that reasonable minds could reach but one conclusion, which is adverse to the non-moving party who is entitled to have the evidence construed in her favor, summary judgment is appropriate. The fourth assignment of error is overruled.
 {¶ 24} The judgment of the Logan County Common Pleas Court is affirmed.
Judgment affirmed
 PRESTON, P.J., and SHAW, J., concur.
[1] Effective January 1, 1974, HB 243, which is codified at R.C. 2323.13, injoined the use of cognovit notes in consumer loans and consumer transactions and abolished the courts' jurisdiction to enter judgment on such notes. The note signed by Milton would fall under the definition either of a "consumer loan" or "consumer transaction" pursuant to R.C. 2323.13(E)(1) or (2). Therefore, contrary to Sharon's contentions and despite any language to the contrary, the promissory note executed by Milton is not a cognovit note. *Page 1