[Cite as *State v. Moore*, 2017-Ohio-4358.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO. 13-17-07

      v.

ANGELA K. MOORE,                **O P I N I O N**

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 16-CR-0077

**Judgment Affirmed**

Date of Decision:    June 19, 2017

APPEARANCES:

    *John M. Kahler, II* **for Appellant**

    *Stephanie Reed* **for Appellee**

**PRESTON, P.J.**

{¶1} Defendant-appellant, Angela K. Moore ("Moore"), appeals the February 2, 2017 judgment entry of sentence of the Seneca County Court of Common Pleas. Moore challenges the constitutionality of R.C. 2907.03(A)(5), Ohio's incest statute, as it was applied to her. For the reasons that follow, we affirm.

{¶2} On April 27, 2016, the Seneca County Grand Jury indicted Moore on two counts of sexual battery in violation of R.C. 2907.03(A)(5), (B), third-degree felonies, as a result of engaging in sexual conduct with her adult biological daughter, A.S. (Doc. No. 1). On June 2, 2016, Moore appeared for arraignment and entered pleas of not guilty. (Doc. No. 13).

{¶3} On August 5, 2016, Moore filed a motion to dismiss the indictment arguing that R.C. 2907.03(A)(5) is unconstitutional as applied to her. (Doc. No. 20). In particular, she argued that the State has no legitimate interest in regulating the consensual sexual conduct between Moore and A.S. because her parental rights were terminated when A.S. was three years old. (*Id.*). The State filed its memorandum in opposition to Moore's motion to dismiss the indictment on August 24, 2016. (Doc. No. 27). Moore filed a "stipulation of facts for purposes of hearing on motion for an order declaring O.R.C. §2907.03(A)(5) unconstitutional and to dismiss the indictment only." (Doc. No. 33). After a hearing on September 8,

2016, the trial court on September 9, 2016 denied Moore's motion to dismiss the indictment. (Doc. Nos. 34, 35).

{¶4} On November 28, 2016, Moore withdrew her pleas of not guilty and entered a plea of no contest with consent to a finding of guilty to one count of the indictment. (Doc. No. 51). In exchange for her change of plea, the State agreed to dismiss the other count of the indictment. (Doc. Nos. 50, 51, 52). The trial court accepted Moore's plea of no contest, found her guilty, dismissed the other count of the indictment, and ordered a presentence investigation. (Doc. Nos. 52, 60). The trial court filed its judgment entry of conviction on November 29, 2016. (Doc. No. 52). The trial court held a sentencing and sex-offender registration hearing on February 1, 2017. (Doc. Nos. 58, 59). The trial court sentenced Moore to 24 months in prison. (Doc. No. 58). The trial court also classified Moore as a Tier III sex offender. (Doc. No. 59). The trial court filed its judgment entries of sentence and sex-offender classification on February 2, 2017. (Doc. Nos. 58, 59).

{¶5} On February 28, 2017, Moore filed her notice of appeal. (Doc. No. 66). She raises one assignment of error for our review.

**Assignment of Error**

**The Trial Court Erred When it Denied Appellant's Motion to Declare O.R.C. §2907.03(A)(5) Unconstitutional.**

{¶6} In her assignment of error, Moore argues the trial court erred by denying her motion to dismiss the indictment because R.C. 2907.03(A)(5) violates the Equal

Protection and substantive Due Process Clauses of the United States and Ohio Constitutions.

{¶7} We review de novo a trial court's decision to dismiss all or any part of an indictment based on the constitutionality of the statute under which the defendant is indicted. *State v. Carnes*, 1st Dist. Hamilton No. C-150752, 2016-Ohio-8019, ¶ 7. We also review de novo the determination of a statute's constitutionality. *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *City of Akron v. Callaway*, 162 Ohio App.3d 781, 2005-Ohio-4095, ¶ 23 (9th Dist.) and *Andreyko v. City of Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, ¶ 11 (1st Dist.). "De novo review is independent, without deference to the lower court's decision." *Id.*, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

{¶8} R.C. 2907.03(A)(5) prohibits sexual battery and provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender when * * * the offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian or person in loco parentis of the other person."

{¶9} "'It is difficult to prove that a statute is unconstitutional.'" *State v. Stoffer*, 2d Dist. Montgomery No. 26268, 2015-Ohio-352, ¶ 8, quoting *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 25. "'All statutes have a strong presumption of constitutionality. * * * Before a court may declare

unconstitutional an enactment of the legislative branch, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible."'" *Id.*, quoting *Arbino* at ¶ 25, quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus.

{¶10} "A party may challenge the constitutionality of a statute with either a facial challenge or an as-applied challenge." *Simpkins v. Grace Brethren Church of Delaware, Ohio*, 149 Ohio St.3d 307, 2016-Ohio-8118, ¶ 20. "A facial challenge asserts that there is no conceivable set of circumstances in which the statute would be valid." *Id.* "An as-applied challenge, on the other hand, alleges that application of the statute in a particular factual context is unconstitutional." *Id.* "A holding that a statute is unconstitutional as applied prevents future application of the statute in a similar context, but it does not render the statute wholly inoperative." *Id.* "A party raising an as-applied constitutional challenge must prove by clear and convincing evidence that the statute is unconstitutional when applied to an existing set of facts." *Id.* at ¶ 22. In this case, Moore is challenging the constitutionality of the sexual-battery statute as it was applied to her. That is, she argues that R.C. 2907.03(A)(5) is unconstitutional as applied to consensual sexual conduct between a parent whose parental rights were previously terminated and an adult biological child.

{¶11} We will first address Moore's substantive-due-process argument. Section 16, Article I of the Ohio Constitution provides, "All courts shall be open,

and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." "[L]egislative enactments may restrict individual rights only 'by due course of law,' a guarantee equivalent to the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, ¶ 41.

{¶12} "There are two tests used to assess the constitutionality of a statute under the Due Process Clause:  strict scrutiny or rational-basis scrutiny." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 18.  "'When reviewing a statute on due-process grounds, we apply a rational-basis test unless the statute restricts the exercise of fundamental rights.'" *Stoffer*, 2015-Ohio-352, at ¶ 9, quoting *Arbino*, 2007-Ohio-6948, at ¶ 49.  Moore concedes that the statute does not impinge a fundamental right. *See Lowe* at ¶ 24 (concluding "that a rational-basis test should be used to analyze [Ohio's incest] statute" because it does not impinge a fundamental right).  Under the rational-basis test, "a statute will be upheld if it is rationally related to a legitimate government purpose and it is not unreasonable or arbitrary." *Stetter* at ¶ 71. *See also Lowe* at ¶ 18.  "'In conducting this review, we must consider whether the General Assembly's purposes in enacting the legislation at issue provide adequate support to justify the statute's effects.'" *Stetter* at ¶ 71, quoting *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, ¶ 157.

{¶13} The Supreme Court of Ohio previously addressed the constitutionality of Ohio's incest statute. *Lowe* at ¶ 4. In that case, Supreme Court of Ohio analyzed R.C. 2907.03(A)(5) under a substantive-due-process analysis and concluded that Ohio's incest statute is rationally related to the legitimate governmental interest of protecting the family unit and family relationships. *Id.* at ¶ 25. Moore does not dispute that protection of the family unit is a legitimate governmental interest. Rather, Moore attempts to distinguish the facts of her case from *Lowe* by arguing that there is no legitimate "family" interest to protect in this case because her parental rights were terminated when the victim was three years old. We disagree. Simply because Moore's parental rights were terminated does not remove her from the type of conduct that the General Assembly intended to prohibit through Ohio's incest statute.

{¶14} This point is best illustrated by the Supreme Court's discussion of the General Assembly's intent in codifying Ohio's incest statute. In discussing the relationship between Ohio's incest statute and the State's interest in protecting the family unit, the Supreme Court of Ohio explained that because "[a] sexual relationship between a parent and child * * * is especially destructive to the family unit," the General Assembly enacted R.C. 2907.03(A)(5) "to protect the family unit by criminalizing incest in Ohio" since "Ohio has a tradition of acknowledging the 'importance of maintaining the family unit.'" *Id.*, quoting *In re Cunningham*, 59

Ohio St.2d 100, 104 (1979). In advancing the purpose of protecting the family unit, the General Assembly intended to criminalize sexual conduct that, in particular, carries a significant risk of harm because the offender holds a special relationship to the victim. *See State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, ¶ 32, citing Ohio Legislative Service Commission, *Summary of Am.Sub.H.B. 511* 13 (1972). *See also Lowe* at ¶ 10-13. Indeed, regardless of whether a natural parent's parental rights are terminated, a natural parent will always stand in a special position to a biological-child victim—the type of relationship which would allow an offender to take unconscionable advantage of a victim. *See Mole* at ¶ 34.

{¶15} Further, by the plain language of the statute, the General Assembly prohibited sexual conduct with a victim when the offender is the *natural* parent of the victim. Unlike the Supreme Court's statement in dicta in *Lowe* that "[t]he statute would no longer apply" to Lowe if he "divorced his wife and no longer was a stepparent to his wife's daughter, the stepparent-stepchild relationship would be dissolved," the termination of parental rights does not dissolve a person's designation as a natural parent. *See Lowe* at ¶ 26. Rather, similar to the Supreme Court's determination that "parents do not cease being parents—whether natural parents, stepparents, or adoptive parents—when their minor child reaches the age of majority" when concluding that Ohio's incest statute applies to sexual conduct

involving adult children, a natural parent does not cease being a parent simply because his or her parental rights were terminated. *See id.* at ¶ 25.

**{¶16}** Accordingly, we conclude that R.C. 2907.05(A)(5) applies to sexual conduct between a natural parent whose parental rights were previously terminated and their child. There can be no doubt that the application of Ohio's incest statute to Moore's conduct "bears a real and substantial relation to the public morals." *State v. Lowe*, 5th Dist. Stark No. 2004CA00292, 2005-Ohio-4274, ¶ 16. Moreover, for the same reasons, the proscription of sexual conduct between a natural parent, whose parental rights were previously terminated, and their child is neither arbitrary nor unreasonable. *See id.* at ¶ 16.

**{¶17}** Therefore, the application of R.C. 2907.03(A)(5) to Moore bears a rational relationship to the legitimate state interest in protecting the family, because it reasonably advances its goal of protection of the family unit from the destructive influence of sexual relationships between parents and their children, and it is neither arbitrary nor unreasonable. *See Lowe*, 2007-Ohio-606, at ¶ 26. *See also State v. Shipley*, 9th Dist. Lorain No. 03CA008275, 2004-Ohio-434, ¶ 81. As such, we conclude that Moore failed to demonstrate by clear and convincing evidence that the application of R.C. 2907.03(A)(5) to her amounts to a violation of due process.

**{¶18}** Moore also challenges the constitutionality of Ohio's incest statute as applied to her under the Equal Protection Clause of the Fourteenth Amendment to

the United States Constitution and Ohio's Equal Protection Clause under Article I, Section 2 of the Ohio Constitution. Article I, Section 2 of the Ohio Constitution provides that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." The Supreme Court of Ohio has "interpreted Article I, Section 2 of the Ohio Constitution to be the equivalent of the Equal Protection Clause in the United States Constitution." *Simpkins*, 2016-Ohio-8118, at ¶ 46.[1]

{¶19} Because this case does not involve a fundamental right or suspect classification, the parties do not dispute that a rational-basis review applies. Accordingly, we are required to uphold the statute under equal-protection review if the statute is rationally related to a legitimate governmental purpose. *Mole*, 2016-Ohio-5124, at ¶ 26. "Under rational-basis review, we grant 'substantial deference' to the General Assembly's predictive judgment." *Simpkins* at ¶ 47, quoting *Arbino*, 2007-Ohio-6948, at ¶ 58.

---

[1] Although the Supreme Court of Ohio has found "greater protection under the Ohio Equal Protection Clause than under the federal Equal Protection Clause," we need not address that argument because Moore does not argue that Ohio's Equal Protection Clause provides greater protections than the federal Equal Protection Clause. *See Simpkins v. Grace Brethren Church of Delaware, Ohio*, 149 Ohio St.3d 307, 2016-Ohio-118, ¶ 46, citing *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, ¶ 23.

{¶20} Moore argues that R.C. 2907.03(A)(5) violates her equal-protection rights because her parental rights were previously terminated. Stated another way, Moore contends that her consensual conduct is no different than the sexual conduct of "most other ordinary consenting adults." (Appellant's Brief at 6). As such, Moore argues that, because her parental rights were terminated and she was not the "parent" of A.S., she is being treated differently from the "ordinary" adult engaging in consensual sexual conduct.

{¶21} For reasons similar to those that led us to conclude above that R.C. 2907.03(A)(5) does not violate Moore's due-process rights, we also conclude that Ohio's incest statute does not violate Moore's equal-protection rights. Moore is not being singled out. As we discussed above, despite her parental rights being previously terminated, Moore remains a natural parent, which, based on the plain language of the statute, is the class of persons encompassed by the statute's prohibition. Moreover, because there is an inherent coercive influence that a natural parent has over a child, even if that natural parent's parental rights were previously terminated, the General Assembly intended to proscribe that type of predatory scenario by enacting Ohio's incest statute. As such, Moore's conduct is within the class of conduct intended to be prevented by Ohio's incest statute. For these reasons, application of R.C. 2907.03(A)(5) to Moore is rationally related to the legitimate governmental interest in protecting the integrity of the family unit. Thus,

the application of R.C. 2907.03(A)(5) to Moore does not violate her right to equal protection under the United States or Ohio Constitutions.

**{¶22}** The trial court did not err by denying Moore's motion to dismiss the indictment. Moore's assignment of error is overruled.

**{¶23}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**